## Case No 267.

### ALSTON et al. v. MUNFORD et al.

### [1 Brock. 266.][1]

Circuit Court, D. Virginia. May Term, 1814.

JUDGMENT AGAINST DECEDENT — SCIRE FACIAS AGAINST HEIRS— ERROR OF CLERK — RES JUDICATA—GUARDIAN AND WARD—SPECIFIC LEGACY —MARSHALING ASSETS.

1. It seems, that the fifth section of the act of Virginia of 1792, which limits the right of reviving judgments by scire facias. or action of debt. to the period of ten years, applies as well to those judgments which had been rendered at the time of the passage of the act, as to those rendered afterwards; but if a creditor, who had obtained a judgment against his debtor, in the life-time of the latter, has been employed in pursuing the personal estate in the hands of the executor, or if a court of equity has enjoined him from exhausting the personal estate, and so the delay has been produced, the act ought not to be so construed as to bar a scire facias against the heir, after the lapse of ten years.

2. An action of debt is brought on a bond; the verdict, as rendered by the jury, is for the penalty to be discharged by the sum expressed in the condition, with interest till paid; but by the misprision of the clerk, the verdict is entered for the smaller sum as damages. without interest, and the judgment is entered for the penalty to be discharged by those damages without interest. It seems, that for this misprision, the judgment might have been reversed by writ of error, coram vobis.

3. In such case, if the misprision occurred in a suit against the executor, and a subsequent suit be brought against the heir, he cannot avail himself of the error in the judgment, (even if it is not amendable,) but is liable for the whole amount due. As the judgment could not be given in evidence against the heir, so neither can it be given in evidence in his favour.

4. If a suit in chancery is brought against an heir, to subject him to the payment of an old bond, and the defence of the heir is the length of time, the court will, if the heir require it, direct an issue, to ascertain whether it has been paid or not.

5. A foreign bill of exchange, protested, does not bind the heir of the drawer.

6. If A be the executor of B, and testamentary guardian of C, the daughter of B, and the testator give a bond as a specific legacy to his daughter, and A receives the bond, and charges himself, in his executor's account, with the amount thereof, "to be paid to his ward," and writes to the obligor, in the bond, that he shall make himself debtor to his ward for the legacy, and hold the obligor as bound to himself. *Held*: 1st. That this is an assent of the executor to the legacy, and a payment of it to the

[1][Reported by John W. Brockenbrough, Esq.]

guardian, as much as if the two characters were not united in one person. 2d. That the sureties of A. in the executor's bond, (as well as the executor,) are discharged from liability for the legacy under the executor's bond. 3d. That A was chargeable, as guardian, but as he gave no bond in that character, his heirs, on his death, are not bound, though the debt remains one of the first dignity against his personal estate.

[Cited in McLaughlin v. Bank of Potomac, 7 How. (48 U. S.) 229.]

7. If there be four testamentary guardians, one of the four has a right to receive a legacy for the ward, from the executor, and to give a receipt to him for the same, and the acquittance to him is good, without requiring the joint receipt of all. And on the same principle, if the characters of executor, and of receiving guardian, be united in the same person, the guardian who charges himself, discharges himself as executor.

8. The principle of marshalling assets, is this. A creditor having the choice of two funds, ought to exercise his right of election in such a manner as not to injure other creditors, who can resort to one only of those funds; but if he, in the exercise of his legal rights, exhausts that to which alone other creditors can resort, equity will place them in his situation, so far as he has applied their funds to his claim.

9. In the application of this principle, simple contract creditors will be substituted for specialty creditors, but not for judgment creditors: that is, the simple contract creditors cannot charge the lands for so much of the personal fund as has been applied to the payment of debts due by judgments obtained against the ancestor. The reason is, that the writ of elegit, by virtue of which the land is charged by judgment against the ancestor, does not issue singly against the land, but against all the chattels, (save oxen, and beasts of the plough,) and if the chattels be sufficient, the land ought not to be extended. The judgment creditor, therefore, has not the election between two funds, (as the specialty creditor has,) and the principle on which assets are marshalled, does not apply to the case.

10. Upon this principle of marshalling assets, where payments have been made by an executor, to the vendor of land purchased by the ancestor, and not conveyed to him, the lien of the vendor will be marshalled.

[11. Cited in Backhouse's Adm'r v. Jett's Adm'r, Case No. 710, to the point that chancery does not make an heir responsible for profits accrued before the filing of his bill.]

In equity. George Alston and others, of the state of North Carolina, executors of Thomas Mutter, late of the said state, exhibited their bill in this court, against William Munford, heir at law, and devisee of Robert Munford, deceased, Anne Munford, his widow, and Anne Byrd, widow of Otway Byrd, and Richard Kennon, and Elizabeth, his wife, which Anne Byrd and Elizabeth Kennon were children of the said Robert Munford, and all of the state of Virginia.

The bill sets forth, that Robert Munford was, in his lifetime, indebted to Thomas Mutter, in a certain sum, by a writing, (a copy of which is filed among the exhibits, and appears to have been a note, without seal,) on which writing a suit was instituted in North Carolina, by the said Mutter, against the executors of the said Robert Munford, and judgment obtained against

them: that Robert Munford, by his will, appointed Otway Byrd, and Richard Kennon, his executors, of whom the former only, qualified, and after possessing himself of the testator's property to a very great amount, died intestate, and Anne Byrd, his widow, administered on his estate: that no person has taken administration on the estate of Robert Munford, since the death of Otway Byrd: that the said Robert Munford died seized in his own right, of large tracts of land in North Carolina and Virginia, and the plaintiff calls on William Munford, his eldest son and heir at law, to discover where those tracts are situated, and to what amount: that the said widow and children are next of kin to the said Robert Munford, and will be entitled, under his will, to any surplus which may remain of his personal estate, after debts paid: that they have frequently demanded payment of the judgment aforesaid, from Otway Byrd, the executor, and from the defendants, but have never obtained it. The bill, therefore, prays, that the above mentioned parties may be made defendants; that an account of the real and personal estate of the testator, Robert Munford, may be taken, as well as the administration of it by Otway Byrd; that the assets may be marshalled; that if the personal estate is insufficient to pay all the debts, the testator's lands may be sold to satisfy them; that the plaintiffs may, if necessary, be substituted in the room of any creditor, or creditors, who may have already received satisfaction; and for general relief. This suit was commenced in July 1803. At the May term of the court 1804, the court ordered one of the commissioners of the court to examine, state, and settle all matters and accounts between the parties in this cause, and to report to the court, what estate the said Robert Munford died seized and possessed of, real and personal, and in what manner the said personal estate has been administered, stating such special matters as either party may require, or he think fit. At the same time, William & Peter Murdock, surviving partners of W. Cunningham & Co.; and James Jameson & Richard Cameron, surviving partners of Buchanans, Hastie & Co.; were respectively, on their bills filed, made parties plaintiffs in this cause. The claim of the first was founded on a bill of exchange drawn by Robert Munford, in February 1776, on William Cunningham of Glasgow, in favour of William Cunningham & Co., which was protested for non-acceptance; and judgment when assets on this protested bill was rendered in favour of the said Cunningham & Co., against Otway Byrd, the executor of Munford in this court, in December 1798. The other claim was founded on a bond, in the usual form, binding his heirs, executed by the said Munford, to Buchanans, Hastie & Co., dated 22d May, 1772, in the penalty of £1166 7s., current money

of Virginia, conditioned to pay in October following, the sum of £566 3s. 6d. On this bond, suit had been brought, and a verdict was rendered in this court, in December 1798. In the verdict, as recorded, the jury assessed the plaintiff's damages to $1220 58 cents, thus giving no interest on those damages, and that the defendant had fully administered. The verdict, as actually rendered, was for the debt in the declaration mentioned, to be discharged by $1220 58 cents, with interest from the last day of October 1780, till paid. The judgment was for the penalty as a sterling debt, but to be discharged by the damages aforesaid assessed, (that is by $1220 58) without interest; and was rendered of the assets, quando acciderint. In May 1805, William Munford, the heir. filed his answer, in which he states, inter alia, that he is the son and residuary devisee of Robert Munford, who died in January 1784; that he is willing to render a just account of the lands which were devised to him. and that a commissioner may make a fair statement of the sales which he made of the said lands, and of the payments which he made to the creditors; that part of the Oconeechee tract is yet unsold, and that the Richland tract, which was devised to the widow for life, is now held by the defendant, the widow being dead: that these tracts lie in Mecklenburg, on Roanoke River. He states, that Otway Byrd, the executor, placed in his hands as attorney, sundry bonds belonging to the estate, for which he will be ready to account, as soon as an administrator, with will annexed of said estate, shall be appointed: that as to the administration of the personal assets, however, the claims of the plaintiffs are of inferior dignity to that of Conway Whittle, in whose favour a decree of the high court of chancery of Virginia has been rendered, and which will absorb all the money in the defendant's hands: that claim, he alleges to be of the first dignity, it being due for a legacy bequeathed by a certain Theodorick Munford, of whom Robert Munford was executor, to Frances, the wife of the said Conway Whittle.

The defendant admits, that as devisee of Robert Munford, he is bound to pay the bonds in which the said Robert bound himself and his heirs. to the value of the real estate devised to him, but he alleges that the claims exhibited by the surviving partners of W. Cunningham & Co., and by the executors of Thomas Mutter, are founded on writings. in which Robert Munford did not bind himself and his heirs, and, therefore, they are not entitled to recover against him as heir, or devisee, except by marshalling the real and personal assets, which cannot be done, until the account of Otway Byrd, the executor of Robert Munford. shall have been settled: that the defendant is not responsible for the transactions of the exec-

utor. nor can he be required to settle the account current; that when an administrator, with the will annexed, shall have been appointed, the account may be legally settled between such administrator, and the administratrix of Otway Byrd, the executor. The defendant also demurred, to so much of the bills as prayed, that the lands left by the said Robert Munford, may be sold for the payment of their claims, on the ground, that the law does not direct lands under no mortgage, or other incumbrances, to be sold for the payment of debts. The defendant, Anne Byrd, administratrix of Otway Byrd, also filed a plea, and answer, and Richard Kennon, also answered. It is deemed unnecessary, to make a statement of their respective defences.

The commissioner made a report of the several matters referred to him, in November 1806, to which both Mutter's executors, and Munford's heir excepted; and in December 1807, the court made an interlocutory order, recommitting the report to the commissioner, with further instructions. It is unnecessary to state the substance of that report, of the exceptions. or of the decree. On the 11th June, 1808, John Peirce, surviving executor, and trustee of Samuel Beall, deceased, was made a party plaintiff in this cause, and filed his bill, which alleges, that the estate of the said Robert Munford, is indebted to that of his testator, by judgment of the general court of Virginia. bearing date on the 20th day of October, 1783, rendered against the said Robert Munford, in his lifetime, for 66,883 lbs. tobacco, with lawful interest, from the 14th day of May, 1782, till payment, on which judgment, a large balance is still due; that the said plaintiff had been enjoined by the chancellor of Virginia, from proceeding on the said judgment by a bill of conformity, filed by Otway Byrd, the executor, who alleged that by paying creditors without an account, he might be subjected to a devastavit. The plaintiff prayed, that satisfaction of his said judgment-debt might be secured to him.

The defendant, William Munford, to this bill, filed his plea and answer. He pleaded, 1st. That the judgment is now no lien on the land of which Robert Munford died seized, if there was ever a lien. being lost through length of time, the said judgment bearing date in October 1783, and no writ of elegit or scire facias having ever been issued, for the purpose of subjecting the said lands to satisfy the same; he. therefore, prayed the benefit of the act for limitations of proceedings upon judgments: 2d. For further plea, he said, that if the said plaintiff hath at this time, any lien on the said lands, by virtue of the judgment, his remedy is at common law, and not in chancery, and he, therefore, pleaded to the jurisdiction of the court. In his answer the defendant says, that Samuel Beall, in his lifetime, revived his judgment, either by

scire facias, or action of debt, in the court of Charles City county, against Otway Byrd as executor of Robert Munford; that he, together with other creditors, was enjoined from proceeding on his judgment, until the nature and dignity of their various claims could be ascertained; that on the 2d of October, 1797, a decree was entered directing the executor to go on, and pay the creditors of Robert Munford in the manner therein directed, which decree the defendant conceives to be equivalent to a dissolution of the injunction: that other creditors (such as Buchanan, Hastie, & Co.) proceeded to enforce their claims at law by obtaining judgments: that the plaintiff has been guilty of neglect in not moving to dissolve the injunction, if it was still tied up by injunction: that Otway Byrd died in September 1800, and that the said suit was entered, abated by his death in September 1802. By reference to the decree of October 1797, mentioned in the above answer, it appears that the injunction was not dissolved. It was abated by the death of Otway Byrd on the day mentioned. The claim of Conway Whittle is sufficiently set forth in the opinion of the court, without making any farther statement.

The chief justice delivered the following opinion:

MARSHALL, Circuit Justice. So far as these suits affect the heir, it becomes material to distinguish those claims which may at this time be asserted against the real estate, and then to inquire what claims may be supported upon the principle of marshalling assets. The first claim which has been discussed, is that of the executors of Samuel Beall, deceased. This was a judgment obtained by Samuel Beall in his lifetime, against Robert Munford in his lifetime, which was revived after the death of Munford, to wit, in 1784 or 1785, against his executors. The great objection to this debt is, that the judgment as against the real assets, is barred by the act of limitations.

By an act passed in 1792,[2] it is declared that judgments in any court within this commonwealth may be revived within ten years next after the date of such judgment, and not after. The words of this act taken in their strict literal sense, certainly extend to this case; but it is contended that this strict construction must yield to one more favourable to the creditor, and Eppes v. Randolph, 2 Call, 125, has been cited in support of this position. In Eppes v. Randolph, the obligation of a judgment of much older date was unquestionably admitted without controversy, but in that case, the point was not made at the bar nor decided by the bench, and the claim was asserted within less than ten years after the passage of the act. In the construction of this act, some difficulty

is produced by the circumstance, that the draftsman has omitted to change the phraseology where a new provision was introduced, so as to adapt the language of the act to the subject. Actions had been previously limited, and this act of 1792, does, in general, only re-enact what was law before, and therefore it would have been improper, in most of its provisions, to give time for the institution of a suit subsequent to the passage of the act. For example: the first section gives a right to sue forth a writ of formedon, within twenty years after the cause of action accrued, and not after. If the whole twenty years had elapsed before the passage of the act, the action would be barred; or if nineteen years had elapsed the action must be brought within one year, or the action would be barred. This is very proper, and was undoubtedly within the intention of the legislature. Previous acts of limitation, which were repealed by this, had created the same bar to this action, and if a time for bringing it had been given after the passage of this act, it would have exempted from the operation of former acts, claims which had already been barred by them, or might have given to the claimants a much longer time to assert those claims than they would otherwise have been entitled to. It was the intention of the legislature merely to bring all former acts into one, and not to change the rights or situation of parties so far as former statutes had provided for the case.[3] But no former act of limitations had extended to judgments. Had the legislature adverted to this circumstance, it is probable that a certain time would have been given, after the passage of the act, for the revival of judgments previously rendered. Not adverting to this circumstance, they have employed terms which, strictly interpreted, must bar immediately any action on judgments of more than ten years standing, unless they be so construed as to exclude those judgments entirely from their operation. There is a peculiar degree of carelessness in the phraseology of the two sections on this subject. The first, which is the fifth section of the act, uses the appropriate terms for those judgments only, which had been actually rendered when the act passed, and would, therefore, justify the idea that the act speaks as at the point of time when the scire facias issues; but the succeeding section applies itself expressly, both to judgments which had been rendered before the passage of the act, and to those which might thereafter be rendered. This produces the necessity of applying the preceding section to the same judgments.[4]

---

[2] Rev. Code 1792, c. 76, § 5. The same provision re-enacted, 1 Rev. Code 1819, c. 128, § 5.

[3] The first section of the act of 1792, c. 76, for the limitation of action, referred to by the chief justice, was re-enacted from the act of 1748, c. 1, (5 Hen. Stat. 415.)

[4] The following are the sections of the act of 1792: "5. Judgments in any court of record within this commonwealth, where execution hath not issued, may be revived by scire facias,

Whether the state courts would, in the construction of this law, supply words which would give those entitled to judgments before its passage, time to revive those judgments by scire facias, is rendered, by the length of time which has already elapsed, a question of not much consequence. The same principle may, however, arise in the case of a judgment on which an execution has issued, or which has been enjoined, where, after the lapse of ten years from its rendition, one of the parties dies. I shall not inquire what would be the law in such a case, but think, that in general, where, after the passage of the act, ten years have passed away without a scire facias, it is too late to sue out that writ.[5] If, then, in this case, there had been no scire facias against the executor, nor injunction on that judgment, I should think it too late to proceed against the heir. But those circumstances change the nature of the case, as will, hereafter, be more particularly noticed.

The next claim to be considered, is that of Buchanan, Hastie & Co. In this case, judgment was rendered in this court, on a bond carrying interest, for a specific sum, although the verdict on which that judgment was rendered, found the penalty of the bond to

be discharged by a less sum, with interest. It is apparent, that the entry of the judgment, which appears to have been the act of the clerk, deriving no sanction from any act of the court, is a clerical misprision, and such a judgment must have been reversed on writ of error. But without inquiring whether it is not amendable, and whether, in making out a record of the cause, it ought or ought not to be considered as the real judgment,[6] I think it perfectly clear, that the heir cannot take advantage of it. A verdict can never be given in evidence in favour of a party, if it might not be given in evidence against him. The heir cannot, therefore, avail himself of this judgment.

The claim of John M'Rae, is on a bond, dated in April 1776. The objection to this is the length of time which has elapsed since its date. If it be the wish of the heir, I shall direct an issue to be tried at this bar, to ascertain whether the bond has been paid or not.

The claim of William Cunningham & Co., being on a bill of exchange, does not bind the heir.

The claim of Conway Whittle, is for a legacy given to his wife by Theodorick Munford, one of whose executors Robert Munford was. The principal objection to this claim is, that Robert Munford, as executor of Theodorick Munford, paid this money to himself as the guardian of his ward, and that, as testamentary guardian, he gave no bond, and, consequently, his heirs are not bound. The legacy is a specific legacy to Frances Munford, the wife of Conway Whittle, of a bond of John Bannister, amounting to £1809. This bond was delivered to Robert Munford, on the 2d of January, 1777, by Archibald Carlos.

On the same day, Robert Munford, in his account with the estate of Theodorick Munford, charges himself with this bond. On the credit side of that account is the following entry: "To John Bannister's bond, to be paid to Frances Munford, £1809." This last entry is under date of the 12th of July, 1778. A letter appears to have been written by Robert Munford to John Bannister, on the 13th of June, 1780, in which he speaks of having received from Mr. Bannister, a payment of £1000, in paper money, intrinsically worth only £200; and after ex-

---

or an action of debt brought thereon, within ten years next after the date of such judgment, and not after; or where execution hath issued, and no return is made thereon, the party in whose favour the same was issued, shall and may obtain other executions, or move against any sheriff or other officer, or his or their security or securities, for not returning the same for the term of ten years from the date of such judgment, and not after." "6. Provided, That if any person or persons, entitled to such judgment, where execution hath not issued, or where execution hath issued and no return made, (in either case,) shall be or were under the age of twenty-one years, feme covert, non compos mentis, imprisoned, or not, within this commonwealth, at the time of such judgment being awarded, whether execution hath issued thereon or not, every such person, his or her heirs, executors, or administrators, shall and may, notwithstanding the said ten years are or shall be expired, have the benefit, by reviving the same by scire facias, or by action of debt; and where execution hath issued, and no return made, every such person or persons, his or her heirs, executors, or administrators, may have the benefit of other executions, or may move against any sheriff or other officer, or his or their security or securities for the same, within five years after such disabilities removed, and not after." Rev. Code 1792. c. 76, §§ 5, 6, re-enacted 1 Rev. Code 1819, c. 188. §§ 5, 6. The court of appeals of Virginia have decided, that this fifth section was prospective only, and did not apply to judgments existing when it took effect. Lyons v. Gregory, 3 Hen. & M. 237; Day v. Pickett, 4 Munf. 104.

[5] In Gee v. Hamilton, 6 Munf. 32, where an execution was issued within the year, and returned nulla bona, it was conceded by the appellant's counsel, that the lapse of ten years was no bar to a scire facias: and it seems that where a party is delayed by injunction, he is not put to his scire facias, but he may sue out his execution within a year after the injunction is dissolved. Noland v. Seekright, Id. 185. And so where there is a stay of execution. Eppes v. Randolph, 2 Call, 186.

[6] As to the uses of the writ of error, coram vobis. see 1 Rob. Pr. 644, 645, citing Sess. Acts, 1819–20, p. 24, ch. 28, § 1; also Gordon v. Frasier, 2 Wash. [Va.] 130; Cole v. Pennell, 2 Rand. [Va.] 174. Where the object is to correct clerical misprisions, this writ has been superseded by the practice of giving notice to the adverse party, and amending upon motion. 1 Rev. Code. 1819, p. 508, § 77, (passed originally in 1792,) and 1 Rev. Code. 1819, p. 512, § 88; [Cogbill v. Cogbill,] 2 Hen. & M. 477; Halley v. Baird, 1 Hen. & M. 25; Beatty v. Smith, 5 Munf. 41; [Bent v. Patten,] 1 Rand. [Va.] 25; [Burch v. White,] 3 Rand. [Va.] 104; [Com. v. Winstons.] 5 Rand. [Va.] 546; [Christian v. Miller,] 3 Leigh, 78.

pressing his confidence that Mr. Bannister would not avail himself of that payment, adds: "Agreeable to your request, I shall make myself debtor to my niece, for the amount of her pecuniary legacy from her father, and consider you as debtor to me for the bond and interest enclosed in your letter." I do not know what other construction to put upon this entry, than to consider it as the consent of the executor to the legacy, and a payment of that legacy to the guardian. The terms of the entry show that the bond was no longer to be considered as a subject on which the executor was to act. It was to be paid to Frances Munford, and in his executor's account, he takes credit for it. This credit is entered among his payments, and bears date more than twelve months after the executor debits himself with the bond.[7] It has been contended, that this transaction, were it even unequivocal, could not discharge the executor, because there were four testamentary guardians, and they must act conjointly. Whatever force might be allowed to this argument, as applicable to the commutation of the bond, which seems to be alluded to in the letter of the 13th of June, 1780, I cannot admit its validity, when applied to the payment made by the executor to the guardian. When there is more than one testamentary guardian, it may be necessary that they should unite in any act which disposes of the property of the ward; but I cannot conceive that the absence of one, disables the other from collecting a debt due to the ward. I cannot conceive that a joint receipt is necessary to the discharge of the debtor. This would be extremely inconvenient, and I should require an express authority to the point, before I could admit the principle. Whether the principle, laid down in 3 Ba. 407, [3 Bac. Abr. (1st Amer. Ed. Phila. 1811) *407, tit. "Guardian by Statute," par. 9,] that, from the nature of the thing, the authority of guardians must be joint and several, be true, in all cases, or not, I think it must be true in the case of receiving the money of a ward. To me, then, it appears that Robert Munford was chargeable with this bond in his character of guardian, and as he gave no bond in that character, his heir is not bound. The debt remains a debt of the first dignity against the personal estate. 1 Rev. Code 1819, p. 389; Id. p. 408, § 12.

The extent to which the heir is directly liable, being stated, with the exception of Beall's judgment, it remains to inquire how far he is to be made liable, on the principle of marshalling assets. The principle on which the court proceeds in marshalling assets, is discussed very much at large in a case reported in 8 Ves. 382, (Aldrich v. Cooper.) The principle is, that a creditor having his choice of two funds, ought to exercise his right of election in such a manner as not to injure other creditors, who can resort to only one of these funds. But if, contrary to equity, he should so exercise his legal rights as to exhaust the fund, to which alone other creditors can resort, then those other creditors will be placed by a court of equity in his situation, so far as he has applied their fund to the satisfaction of his claim.[8] In the application of this principle, no doubt can exist, so far as respects creditors by specialty, in which the heir is bound. Such a case is precisely within the principle, and is the case to which the principle has been most frequently applied.[9] It has been contended by the heir, that moneys applied by the executor in payment for lands purchased by the ancestor, and not conveyed to him, are not to be considered as being now chargeable on the real estate. But, in such case, the creditor had his election to proceed by way of ejectment, and if the heir should enjoin, and call on the executor to satisfy the debt out of the personal estate, a court of equity would certainly not decree such satisfaction to the injury of simple contract creditors: such a case, therefore, seems to come precisely within the general principle, for the creditor had his election of two funds at law. But this question came on to be considered in Trimmer v. Bayne, reported in 9 Ves. 209, where the decision was against the heir.[10]

The question, about which I have felt most difficulty, is, that which relates to the claims

[7] The principle seems to be well settled, that where an executor, or administrator, having assets in his hands, is also guardian of a legatee, or distributee, he can elect to hold the share of that legatee, or distributee, in his character of guardian, and thus, exonerate the sureties in the administration bond, and charge the sureties in the guardian's bond. But there must be some act, from which the election to hold the property in a different character from that in which it was received may fairly be inferred, before the responsibility can be shifted from one class of sureties to another. Taylor v. Deblois, [Case No. 13,790;] Pratt v. Northan, [Id. 11,376;] Myers v. Wade, 6 Rand. [Va.] 444.

[8] The same general principle on which equity marshals assets, is also laid down in Lanoy v. Duke and Dutchess of Athol, 2 Atk. 446; Lacam v. Mertins, 1 Ves. Sr. 312; Mogg v. Hodges, 2 Ves. Sr. 52; Trent v. Trent's Ex'x, Gilmer. 188; Cheeseborough v. Millard, 1 Johns. Ch. 409.

[9] Galton v. Hancock, 2 Atk. 436; Powell v. Robins, 7 Ves. 209; Haydon v. Goode, 4 Hen. & M. 460.

[10] In conformity with this opinion, and with that in Trimmer v. Bayne, is the modern case of Selby v. Selby, 4 Russ. 336, 3 Cond. Eng. Ch. 694, reviewing the cases of Pollexsen v. Moore, 3 Atk. 272; Coppin v. Coppin, 2 P. Wms. 291; Trimmer v. Bayne, above cited; Mackreth v. Symmons, 15 Ves. 344; Headley v. Readhead, Coop. 50; Austen v. Halsey, 6 Ves. 475. In Selby v. Selby, the master of the rolls (Sir John Leach) said: "In Pollexsen v. Moore, Lord Hardwicke is reported to have stated, that the lien of a vendor does not prevail for the benefit of a third person: yet his decree was, that a legatee in that case was entitled to the benefit of the lien of the vendor. In that case, as in this, the purchased estate

of simple contract creditors, founded on payments made on judgments obtained against the testator in his lifetime. On this subject, I have searched every book of chancery reports to which I have access, and can find nothing completely satisfactory respecting it. In the case of Finch v. Earl of Winchelsea, reported in a note in 3 Peere Williams, 399, it was contended by counsel at the bar, that simple contract creditors were entitled to take the place of judgment creditors, so far as the latter had exhausted the personal fund, and the court did not negative the doctrine; but the case was decided on another point, and the reporter adds a quaere.

In 4 Vesey, 538, (Sharpe v. Earl of Scarborough,) it is stated in the index, and in the marginal note, to have been expressly determined, that assets could not be marshalled in consequence of payments made out of the personal fund to judgment creditors; but on examining the case itself, the decision of the chancellor is not found to be so express as it is stated to be in the index and marginal note. The implication, however, is in favour of the opinion, that simple contract creditors are not permitted to take the place of judgment creditors, as against the real fund. It has considerable weight with me, that there is not a case in the books, nor a dictum from the bench, in which it is said, that simple contract creditors may stand in the place of judgment creditors who have exhausted the personal fund, although the principle of marshalling assets has been discussed, perhaps, as frequently as any other on which a court of equity acts. That principle is continually stated, as applicable to payments made out

of the personal fund to specialty creditors and mortgages, but never to judgment creditors. There being no express authority which is satisfactory, the question was to be considered on principle. In taking this view of the subject, it became necessary to inquire, whether the judgment creditor possessed, at law, his election of two funds, or was under the necessity of pursuing the personal fund in the first instance. The oldest case that I have seen on this point, is that in 2 Dyer, (Bricknold v. Owen, 208 a,) which was cited by the counsel for the plaintiff. In that case, an elegit appears to have been awarded against the terre-tenants, and it is to be presumed, that no previous scire facias issued against the executor. But the question was not made, and the reporter adds a quaere, whether there ought not to be first a scire facias against the executor, and on nihil returned, then a scire facias against the terre-tenant, as was decided in 7 Hen. IV. But as such a scire facias on a recognizance is given in the judicial register, he doubts if the law be not the same as to judgments. In a note to the same report, it is said to have been afterwards stated in another case, to have been the course of the exchequer, not to charge the lands in the hands of the heir for the debt of the king, until the personal estate be exhausted. In [Panton v. Hall,] Carthew, 107, it is stated expressly by counsel, to be admitted law, that a scire facias cannot issue against the heir until the personal estate shall have been exhausted. In support of this position, many decisions from the year-books are cited, and it is not contradicted by the court, or by the counsel. This position is introduced into Bacon, and stands in the new edition as law, nor is any opposing principle laid down, or any contrary authority cited. In 14 Vin. Abr. tit. "Heir," letter R, § 2, it is stated, that an application was made to the king's bench, for a scire facias against the heir before process against the executor, which was refused. The weight of authority, therefore, appears to be decidedly in favour of the opinion, that the judgment creditor cannot proceed against the heir until he has exhausted the personal estate. I am the more satisfied with these authorities, because they appear to me to lay down the positive rule in strict conformity with principle.

The writ of elegit, in virtue of which the land is charged by a judgment against the ancestor, does not issue singly against the land, but orders the sheriff to deliver all the chattels, (oxen and beasts of the plough excepted,) and a moiety of the lands, to the creditor. In his commentary on this statute, 2 Inst. 95, Lord Coke says, that if the chattels be sufficient to satisfy the debt, the land ought not to be extended. Upon viewing the writ of elegit, given by our act of assembly, I have no doubt but that the same rule would regulate the conduct of the sher-

---

was devised. Many observations have, in subsequent cases, been made with a view to reconcile the dictum and decree of Lord Hardwicke; but I must admit, without success. In the case of Coppin v. Coppin the purchased estate was not devised by the purchaser, but descended to his heir, and the question there was between the heir and legatees; and the court refused to marshal the assets in their favour. In the case of Trimmer v. Bayne, Sir William Grant, after referring to the dictum of Lord Hardwicke in Pollexsen v. Moore, and stating that he had been much perplexed by that case, comes to a conclusion directly opposed to that dictum, and expressly states that the lien of a purchaser is within the common principle of marshalling assets; that a person having power, to resort to two funds, shall not, by his election, disappoint another having one fund only. The purchased estate had in that case descended to the heir; but it does not appear by the report with what class of claimants the heir was contending —whether with simple contract creditors, or with legatees." In Selby v. Selby the contest was between the devisees of the purchased estate and simple contract creditors, and the master of the rolls said, that the established rule being that simple contract creditors are, as against a devisee, to stand in the place of specialty creditors who have exhausted the personal assets, because the specialty creditors had the two funds to resort to, so in that case the simple contract creditors were entitled to stand in the place of the vendor against the devisees, because the vendor had equally a charge upon the double fund of real and personal estate.

iff.[11] Since then, upon an elegit issued on the judgment against the ancestor, the personal estate is first liable, it would seem to be reasonable that the same judgment would, after his decease, affect his estate in the same order, and that the personal fund should be applied first to its discharge. If this be the law, then the judgment creditor has no election. He is under the necessity of proceeding, in the first instance, against the personal estate, and the principle on which assets are marshalled, would not apply to the case.

If there be two mortgagees, A, the prior mortgagee, upon two tracts, and B, the subsequent mortgagee, on one only of those tracts; if A should appropriate to his debt the land mortgaged to B, then B would be permitted to take the place of A, with respect to the other tract. But if, by the terms of A's mortgage, he was bound first to apply the tract mortgaged to B, then B would not be allowed to take the place of A. The reason on which he could, in the case first put, be permitted so to do, would cease. I am, therefore, of opinion, that in marshalling assets, simple contract creditors cannot charge the lands for so much of the personal fund as has been applied to the payment of debts, due by judgments obtained against the ancestor. It is very possible that this decision may, in this case, be extremely unfavourable to the heir.

If the personal estate must be exhausted before the judgment creditor can proceed against the real estate, so that the proceeding against the heir is dependent on the proceeding against the executor, it would seem to follow, that the act respecting the renewal of judgments, ought not to be so construed as to bar a scire facias against the heir, provided the creditor has been employed in pursuing the personal estate; and, especially, if a court of equity has prevented him from exhausting the personal estate. It is with regret I give gentlemen of the bar additional trouble. But I was, at the argument of this case, so satisfied that the judgment could not be revived against the heir, as ten years had elapsed since its rendition, and since the passage of the act, that I did not sufficiently advert to those other arguments which respected the claim of Beall's representatives. This opinion was not shaken until I considered that question in connexion with the right of the creditor to proceed immediately against the heir. It was then out of my power to recall the other points, on which the liability of the heir, for the balance of Beall's judgment, depends.

The arguments which have been urged at the bar, to show that the heir is not liable, on account of the payments made to the creditors of Theodorick Munford, are, in my opinion, conclusive. I do not think the devastavit fixed; nor do I think him bound by the report in chancery, as by an exhibit produced, and relied on, by him. That report is to be considered as an exhibit admitted by both parties, to be substantiated in the place of a report made to this court by one of its commissioners. It is, consequently, open to all the exceptions which might have been made to it, if returned directly to this court.

The objections made to the jurisdiction of this court, are not deemed sufficient to prevent a decree on the interests of all the parties. In addition to other considerations urged in favour of a decision of the whole subject, the argument founded on the bill for marshalling assets, is conclusive. The creditors, who have a direct charge on the lands, must come in on that fund before it can be touched by the simple contract creditors, and, consequently, the court must direct them to be satisfied, before it can apply the surplus to creditors by simple contract. The case, then, is like that of a subsequent mortgagee wishing to foreclose. All prior incumbrances must be brought before the court and satisfied, before he can obtain a decree.

NOTE BY THE CHIEF JUSTICE. This cause came on afterwards to be argued, on the question, whether the heir was liable for profits received before the filing of the bill: and the court determined that he was not: but that opinion is lost.

---

ALTEMUS, (HARDING v.)

[See Harding v. Altemus, Case No. 6,049.]

---

[11] The writ of elegit given by the Virginia statute, is the same as that given by the English statute of 13 Edw. I. c. 18. For the form of the writ, see 1 Rev. Code 1819, p. 525.

