R. H. WOODFIN, Administrator *de bonis non*, vs. ELIZA ANDERSON and others, and H. H. WILKINSON and others. vs. THOMAS J. ANDERSON and others.

## April Term, 1875.

ADMINISTRATION — PERSONAL ASSETS MUST BE EXHAUSTED TO REACH REALTY.—Upon bill filed by an administrator *de bonis non* to subject real estate descended to the payment of debts, the realty cannot be reached until it has been shown by settlements with the previous and present administrator that the personal assets have been legally administered, and if the administrator *de bonis non* has neglected to bring his predecessor before the court. for this purpose, it may be done by any of the creditors.

SAME—HEIRS—INFANT HEIR.—The heirs to whom land has descended may, each for himself, make any defence to a claim filed against the estate, upon a bill to subject the realty, which either the ancestor or the administrator could have made, as well as any defence given by law to the heir himself, although the claim may have been established by judgment or otherwise against the administrator; and if the adult heirs make no defence, the infant heir may contest the liability of his inheritance for its proportion of the debt.

SAME—LIMITATION OF ACTIONS.—The running of the statute of limitations of two years and six months is not prevented by the administrator taking the creditor to his attorney and directing the latter to pay the claim out of certain moneys due the estate, when collected, nor by writing on the back of the claim : "I request that no suit shall be brought on this note, and agree that the statute shall not run against it; I will pay it soon."

SAME—SAME.—The specific mention of a claim, without disputing its validity, in the bill of an administrator to reach realty, may save the bar of the statute as against the administrator, and the adult heirs who make no issue by answer or cross-bill, but not against an infant defendant.

EXCEPTIONS TO REPORT.—Exceptions to a master's report, which, if sustained, would require the master to go beyond the order under which he is acting, are bad.

*Thos. H. Malone*, for administrator.

*Jno. A. Campbell, J. B. White*, for creditors.

*Jno. D. Wade*, for infant.

THE CHANCELLOR :— In the month of May, 1867, William ·G. Anderson died in this county, intestate, and on the 13th ·of July, 1867, Thomas J. Anderson was appointed and ·qualified as administrator of his estate, giving bond with R. H. Woodfin, Campbell Slayden, and D. W. Knight as his sureties.  On the 23d of April, 1870, Thomas J. Anderson was removed as administrator, and R. H. Woodfin appointed ·administrator *de bonis non* in his stead, and qualified as such. ·On the 8th of September, 1870, R. H. Woodfin, as administrator *de bonis non*, filed his original bill in this court, ·after having first suggested the insolvency of the estate, to ·transfer the administration to this court.  The bill is filed ·against the widow and children of the intestate, and against W. R. Ford, A. B. Ford, and Samuel Adkisson, creditors ·of the estate, and " all the creditors " of said estate, with- ·out naming them.  Thomas J. Anderson, the former admin- istrator, is made a defendant as a child of the intestate, but ·not for the purpose of having an account of his adminis- tration.

In regard to the debts of the estate, the bill says : ·" Complainant states that most of the debts of the estate were paid by the former administrator, as he believes, but that there are still acknowledged debts and judgments ·unpaid more than sufficient to absorb the entire personal ·assets which, under the most favorable circumstances, he can hope to collect.  He states that W. R. and A. B. Ford have judgments against the former administrator for about $1,500, ·Charles Sayers a judgment for $150, J. H. Cullom a judg- ·ment for $90, Silas Linton a note for $150, and Samuel Adkisson a note for $300.  These judgments and notes ·amount in the aggregate to $2,190, exclusive of interest. ·In addition to this there are taxes due and unpaid to the ·amount of at least $500.  Counsel fees are due, and there

may be other claims not now remembered." It will, there-fore, he suggests, be absolutely necessary to sell some por-tion of the realty, which he sets out and describes, in order to pay debts. He asks that the creditors, judgment cred-itors as well as others, be required to file their claims in this court, that all proper accounts be taken, and such. portion of the land sold as may be necessary, etc.

One of the intestate's children being an infant, J. D.. Wade, was appointed her guardian *ad litem*, and answered for her. The complainant's wife being also a child of the: intestate, she was permitted to answer by next friend. The Fords answered and set up their claims, both having recov--ered judgments in 1869, in the circuit court, against the first administrator. These answers were filed on the 11th and. 12th of October, 1870. The bill was taken for confessed as. to Adkisson, but he seems afterwards, on the 10th of August,. 1872, to have filed an answer, exhibiting his claim, which, was a note of the intestate.

On the 5th of August, 1872, a decree was drawn up. reciting the facts substantially as set forth in the bill, except, the allegations touching specific debts, and thereupon transferring the administration to this court, and enjoining· all creditors from further prosecuting suits for their claims, without leave of the court, and directing "that all credit-ors file their claims in this court," without specifying any· limitation of time, or ordering publication to be made. It, was further ordered that the master take an account with the complainant, as administrator, and an account of the: debts of the estate, and ascertain whether it would be necessary to sell any of the realty for the payment of debts, and what portion should be sold. All questions not. settled by the decree were reserved. Upon application of H. H. Wilkinson he was permitted to file his petition as a creditor of the estate, "subject to exception hereafter for· not coming in sooner." Leave was also given to Adkisson. to answer the bill as to his debt.

On the 15th of June, 1872, the master filed his report,.

in compliance with this decretal order, showing that he had taken and stated an account with the complainant, as administrator *de bonis non*, by which he found him chargeable, after some small payments allowed, with $831.51, personal assets. He reported debts to the amount of $3,712.05, showing a deficit of means to pay debts of $2,890.54, which, with the costs of administration, could only be paid by a sale of realty. In his report of debts the master gives the dates of the recovery of judgments against the first administrator, where such judgments were shown to have been recovered, and the dates of the filing of the other claims.

This report seems to have slept until the May term, 1873, when the guardian *ad litem* of the infant defendant put in the following exceptions :

1st. That the master only reports the assets which came, or should have come, to the hands of complainant as administrator *de bonis non*, saying nothing of the assets which came to the hands of the first administrator, and whether waste had been committed by such administrator.

2d. That it does not appear that all the assets (meaning personal assets) will not be sufficient to pay the debts, until when the court has no power to order a sale of realty descended.

3d. That the report is not sufficiently definite as to the solvency of one of the claims in favor of the estate which came to the hands of complainant, as administrator, naming it.

About this time, and on the 24th of May, 1873, upon the application of Virginia Cullom, one of the daughters of the intestate, under whose husband one of the creditors of the estate held his claim, J. B. White was appointed " to attend to her interest," which, by a liberal construction, may mean that he was appointed next friend, to appear and defend for her. And on the 20th of May, 1873, she files her answer and cross-bill, in which she insists that the personal assets of the estate amount to largely more than found by the

master's report, and that the complainant, as administrator *de bonis non*, and his predecessor in office, as administrator, should be held to a strict account for such assets. The complainant and Thomas J. Anderson are made defendants to this cross-bill, and required to answer. Process under this cross-bill was executed on Woodfin on the 1st of October, 1873, and returned " not to be found " as to Anderson. If any other step has been taken on this branch of the case, there is no evidence of it in the papers handed to me.

On the 20th of December, 1873, upon application of complainant Woodfin, supported by affidavits, leave was given him to file exceptions to the master's report, and to rely upon the statute of limitations against the claims allowed. But, in order as far as possible to prevent injustice to the creditors, the account was reopened, and the master directed to give notice to the creditors, and hear such proof as they might introduce in reference to the proposed defence, and make an additional report.

. On the 6th of June, 1874, the master reported that no testimony had been offered upon the point reserved, and he adds two other claims as filed against the estate.

. On the 7th of October, 1873, the guardian *ad litem* of the infant defendant filed exceptions to the claims of Adkisson, Ivey, Wilkinson, and Demoss, that they were barred by the statute of limitations. And on the 10th of June, 1874, to the report as amended, the complainant, as administrator, by exception, raised the same objection to the first three of these claims, and also to the claim of Linton, another creditor.

. In the meantime, on the 15th of September, 1873, Wilkinson, Adkisson, and Milum, three of the creditors, for themselves, and others who may come in and make themselves parties according to law, filed a bill against Thomas J. Anderson and R. H. Woodfin, Campbell Slayden and D. W. Knight, for an account of the administration of Anderson, and to hold the other defendants liable, as sureties on his administration bond, for any balance that might be

found against him. This bill referred to Woodfin's bill, recited what had been done under it, stated that the court. intimated that the realty descended could not be sold without such an account of the previous administration as was asked for, and prayed that the two suits might be consolidated if necessary. A demurrer to this bill by Woodfin, for want of équity on its face and for other causes, was overruled by me in a written opinion, in which I held : 1st. That the inheritance of an heir cannot be subjected to the satisfaction of the ancestor's debt until the personal estate is shown to have been exhausted, and then only to the extent of the excess of debts over assets ; and, if the personal assets have been wasted, the remedy is against the personal representative and his sureties. Code, § 2388 ; *Peck* v. *Wheaton*, M. & Y. 353 ; *Anderson* v. *Clark*, 2 Swan, 160. 2d. That the former representative is, therefore, a necessary party to a bill by an administrator *de bonis non* for the sale of realty to pay debts, and if he is not brought into court by the administrator *de bonis non* who files such a bill, he may be by the creditors who come in as defendants, by a cross-bill, or by an original bill in the nature of a cross-bill. I considered this new bill as, in substance, a cross-bill for the purpose of having an account of the previous administration.

Under this bill publication has been made for the defendant Thomas J. Anderson, as a non-resident of the state, and he has not answered. Woodfin and Knight have separately answered, each, in effect, denying that there was any devastavit by Thomas J. Anderson, as administrator, and insisting that the claims of the complainants are barred by the statutes of limitation in favor of the estates of decedents, and, consequently, that they have no right to the account they ask for. The defendant Slayden was served with process, but has not answered. No evidence whatever has been filed in this case, but it has been heard with, and as a part of, the original cause.

The first point to be considered in this case is whether there are any, and what, valid claims filed against the estate.

For, if there are none, the litigation is useless; and, if only some of the claims reported are sustained, the character or the litigation may be simplified. The report being regularly made under decretal orders, must, of course, be confirmed, unless the exceptions to it are, either in whole or in part, held to be well taken.

The first exceptions were filed by the guardian *ad litem* of the infant defendant, on the 19th of May, 1873, and, although neither they nor the exceptions of the same party of the 7th of October, 1873, have been refiled to the new report of the master, I will consider them as if so filed.

The first two of these exceptions are clearly not well taken, for they go, not to the report as made, but to the principle of the order of reference. The first is that the master has only taken an account of the assets which came to the hands of the administrator *de bonis non*, not of those which came to the hands of the former administrator; and the second is, as a corollary, that it does not appear that the personal assets will not pay the debts. But the master was not directed to take an account of the previous administration, and, of course, it cannot be objected to his report that it did not go outside of the order of reference. *Chaffin* v. *Chaffin*, 2 Dev. & B. Eq. 267. The suggestions of these exceptions might properly enough be addressed to the court with a view to its future decrees in the cause, but are out of place in the form adopted. The third exception, in reference to the Hunt claim, is clearly bad, and no better evidence of the worthlessness, *prima facie*, of that claim could possibly be produced than the return of an execution *nulla bona*. These exceptions are, therefore, not well taken, and must all be disallowed.

The complainant, as administrator, and the guardian *ad litem* have also, by exception, relied upon the bar of the statute of limitations as to certain claims, three of the claims being the same in each set of exceptions. I will first consider the exceptions of the administrator, for, if they are sustained as to any of the claims embraced in the other

22

exceptions, the consideration of the latter becomes to that extent unnecessary.

The claims thus excepted to by the administrator may be divided into two classes; 1st, the claims of creditors not mentioned in the bill; and, 2d, claims thus mentioned. The Wilkinson and Ivey claims are not mentioned in the bill; the other two are. The Wilkinson claim was allowed to be brought forward, subject to this very exception, by the order of the 5th of August, 1872. It appears to be an obligation in writing, executed by the intestate on the 2d of April, 1867, for $200, to be paid, at the option of the obligor, within thirty days, in a certain mode, which was not done. The Code, § 2279, requires the creditor, who is a citizen of the state, to bring suit within two years and six months, or be forever barred. The suit in this case was not brought until the filing of the petition, on the 24th of August, 1872, according to a recent decision. *Gleaves, Administrator,* v. *Wilson's Heirs,* Sup. Ct. Tenn., December term, 1874. But even if it should be considered as brought from the filing of the claim, on the 9th of November, 1870, the result would be the same. More than three years had then elapsed since the qualification of the first administrator, and the claim was barred. No request for delay to bring suit for a definite time, under § 2280, is set up in the petition. The creditor proves, in his deposition, that he demanded payment of the first administrator, who promised to pay, and, the witness adds, "took me to A. Demoss, his attorney, as I suppose, and he directed Demoss to pay it out of certain moneys due to the estate, when collected." If this direction had been accompanied by a request to delay suit until the money was collected, the request would, perhaps, have been for delay "for a definite time" within the statute. *McKissach* v. *Smith,* 1 Sneed, 470; *Pucket* v. *James,* 2 Humph. 473. But without such request, especially where no such request is insisted upon in the creditor's petition or answer, the case is within the law, not the exception, and is barred. *Trott* v. *West,* 9

*Yerg.* 433; *Chesnut* v. *McBride*, 1 Heisk. 389. The exception must be allowed.

The Ivey claim seems to be a note filed on the 13th of December, 1871, without any petition, so far as the papers show, or any evidence touching it. The bar of the statute attached during the first administration, and the exception must be sustained.

The Adkisson and Linton claims, which are also excepted to by the complainant, as administrator, are both mentioned in the bill, and treated as valid claims. Adkisson is also made a defendant, and the *pro confesso* order taken against him was an authentication of it. *Henderson* v. *McGhee*, 6 Heisk. 55, 58. The subsequent permission to file an answer, in which the claim is set up substantially as described in the bill, would not deprive him of any right previously acquired. The mention of the claims in the bill, without disputing their justice, would seem to be a sufficient recognition to obviate the necessity of answers and proof. Id. And this for the obvious reason that the master, in executing the order of reference to ascertain debts, has only to look to the bill itself for such claims as are therein mentioned. The complainant cannot go back on his bill. The exceptions to these claims, so far as the administrator is concerned, are disallowed.

But there can be no doubt of the right of the heirs of the intestate, to whom realty has descended, to contest the validity of claims so far as they are sought to be charged on the realty, although they may have been validly established against the administrator, for there is no privity between them and the personal representative. *Garnett* v. *Macon*, 6 Call, 308; *Aston* v. *Munford*, 1 Brock. 266; *Mason* v. *Peters*, 1 Munf. 437. They may make any defence to the claims which might have been made by the personal representative. *Sneed* v. *Mayfield's Heirs*, Cooke, 60; *Gilman* v. *Tisdale's Heirs*, 1 Yerg. 288; *Neal* v. *McCombs*, 2 Yerg. 10. And they may make other defences which he could not. *Peck* v. *Wheaton*, M. & Y. 353. If, however, the

bill filed by the personal representative recognize particular debts, the heirs who are made defendants cannot dispute these debts unless they undertake to do so in their answers and by cross-bills. By raising no issue with the complainant on the allegations of the bill, they acquiesce therein. For if it were held otherwise the creditor would be thrown off his guard, and to his detriment. But it is obvious this principle will only apply to adult heirs. The infants are not bound by the averments of the bill, and the latter must be proved as if put in issue. The infant defendant in this case might, therefore, be able to resist the enforcement of claims against her interest in the realty which could not be resisted either by the administrator or the other heirs. Each heir is entitled to his day in court, and may severally contest the liability of his inheritance for its proportion of the debt. *Roberts* v. *Busby*, 3 Hayw. 299; *Williams* v. *Seawell*, 1 Yerg. 83; *McCormick* v. *Gibson*, 3 Bland, 508.

In this view, although the Adkisson claim may be good against the administrator, and the administrator may not be able to except to the Demoss claim, these claims may, nevertheless, be subject to exception by the infant heir. There is nothing in the record to show that these claims are not barred by the statute of limitations, so far as the infant's inheritance is concerned. It is true Thomas J. Anderson, as administrator, on the 5th of April, 1869, wrote on the note of the latter as follows: "I request that no suit shall be brought on this note, and agree that the statute shall not run against it. I will pay it soon." But this is clearly not a request for a definite time, within the statute, as has been expressly decided of the very words used, a promise "to pay soon." *Trott* v. *West*, 9 Yerg. 433; *McKissach* v. *Smith*, 1 Sneed, 473; *Chesnut* v. *McBride*, 1 Heisk. 393. Nor has this latter claim been presented in proper form. The exception of the infant to these claims must, therefore, be sustained, to the extent, however, only of the infant's proportional share of the burden, which is one-seventh, there being seven children. The other chil-

dren having raised no issue upon the averments of the bill, and filed no exceptions to the report, are bound by the rulings on the exceptions of the administrator.

The master's report will be rectified in conformity with these rulings, and in other respects confirmed.

The result is to leave a considerable debt against the estate; and the assets in the hands of the present administrator, and with which alone he is chargeable, are clearly insufficient to pay these debts. Of the creditors whose claims are recognized, in whole or in part, by these rulings, are Adkisson and Milum, two of the complainants in the cross-bill. These complainants have brought the former administrator and his sureties before the court. Virginia Cullom, one of the heirs, sought to do the same thing by her cross-bill. That cross-bill, so far as it seeks to open the settlement of the present administrator, cannot prevail, for she was a party to the suit when the account was taken, and shows no sufficient reason for reopening the account. The cross-bill also becomes useless, so far as it seeks an account with the first administrator, the same end being reached by the cross-bill of Adkisson and Milum. Under this bill no proof has been introduced. It is very probable that Woodfin is correct in stating, in his answer to the cross-bill, that there has been no devastavit. It may, therefore, be a useless expense to take that account; but the heirs are clearly entitled to it. If any of them desire it a reference will be ordered to take the account; and, in the meantime, until the coming in of the report, any decree for the sale of the land for the payment of debts will be suspended. If, however, the heirs conclude that it would be useless to make the reference, a decree may be drawn up reciting the fact, and ordering a sufficiency of the land to be sold to pay debts. The entire costs will be paid out of the estate.