Parr, Nolen & Co. *v.* A. L. & J. C. Fumbanks.

11L 391
14L 670
2pi 451
2pi 659
3pi 281

PARR, NOLEN & CO., *et al., v.* A. L. & J. C. FUMBANKS, *et al.*

1. MARSHALING SECURITIES. *Homestead. Abandonment.* A conveyed by trust deed, two tracts of land, upon one of which A and wife resided, to secure debts owed B, C and D; A and wife subsequently conveyed by trust deed, releasing homestead, the same land and certain personalty to secure the debt owed B included in the first conveyance. *Held,* on bill brought by C and D; first, B having two funds for his security, while C and D had only one of them, would be compelled first to exhaust the personalty before sharing in the proceeds of the realty; second, though the second conveyance was not *per se* an abandonment of the homestead, the equitable title remaining in the conveyor, nevertheless, since complainants were entitled to have the second conveyance enforced and whatever right the trustee had under it sold, the purchaser at such sale would be entitled to possession as against A and wife; the result would be that the homestead, being a mere exemption and not an estate, would be extinguished and the purchaser under the first deed would get the benefit of it; consequently, the sale of the realty was ordered to be made as follows : (A) the tract upon which A and wife did not reside ; (B) the tract upon which A and wife resided, first setting apvrt homestead; (C), if the amounts thus realized were insufficient to pay all the debts, then the tract upon which A and wife resided, absolutely and in bar of homestead.

---

FROM DYER.

---

Appeal from the Chancery Court at Dyersburg. JOHN SOMERS, Ch.

M. M. MARSHALL, T. E. RICHARDSON and WATKINS for complainants.

LATTA, HILL and PARKS for defendants.

FREEMAN, J., delivered the opinion of the court.

On the 1st of January, 1876, Fowlkes, his wife not joining in the conveyance, made a deed conveying two tracts of land in Dyer county, specifically describ· ing the separate tracts, to S. R. Latta, trustee, to secure the payment of debts due A. L. & J. C. Fumbanks, Peter E. Wilson, Parr, Nolen & Co., E. R. Vernon and H. Clark. This deed was to run until the 1st of January, 1877, when, if the debts were not paid, the property was to be sold, and, after expenses of the trust, the proceeds to be applied *pro rata* to discharge the specified debts. This deed was duly acknowledged and noted for registration on 4th of January, 1876. On this day another deed was made by Fowlkes and wife, conveying the same tract of land to Latta, as trustee, together with several horses and other stock, to secure the same debt of $1,510 due to A. L. & J. C. Fumbanks, that had been embraced in the former deed of trust of the 1st of January. This second deed of trust was noted for registration a short time after the first. Afterwards, in October, 1879, neither of the other deeds having been foreclosed, Fowlkes conveyed several growing crops of corn and cotton directly to A. L. & J. C. Fumbanks, to secure the payment of this debt, authorizing the trustees to sell the same publicly or ship, as they might deem best, and apply the proceeds to the payment of the debts. These conveyances are known as exhibits A, C and D.

The matter standing thus, in January 1880, S. R.

Latta, at request of Fowlkes and Fumbanks, advertised the land for sale under the first deed of trust, announcing that he would sell the whole land as one tract, and subject to homstead. It is proper to say that the tracts lie adjoining, and had been used as one farm by Fowlkes for a number of years, he and family residing on the farm. Under this state of facts, complainants, the other creditors secured by the first deed of trust, filed this bill enjoining the sale by Latta of the land, and setting up several equities as against A. L. & J. C. Fumbanks, asking, upon their determination, that the land be sold and proceeds appropriated to the payment of the debts in accord with the prayer of the bill.

The main theory of this bill is, that A. L. & J. C. Fumbanks, by taking the later securities for their debt, were obtaining in some way an unfair and unconscientious advantage and preference over the other parties secured with them by the first deed, and that this ought not to be permitted by a court of equity. What this advantage is, so far as the land in the second deed of trust is concerned, it would be difficult to see in any view that may be taken of it. It was a conveyance made and registered after the first, therefore subordinate to it, as to all the rights conveyed under the first deed, and could in no way override the previous rights acquired. We know of no principle of law or sound justice in such a case that forbids a creditor, when he has obtained one security for his debt, if he deems it inadequate, obtaining additional security that shall make it safe. The fact

that other parties have an interest in the first security taken, may furnish a good reason for desiring additional security, because it to that extent lessens the value of the security already obtained.

The real equity, however, made by the facts stated in the bill, and asserted as secondary ground of relief, though not with strict accuracy, is, that complainants have but the one security to which they can resort for satisfaction of their debts, while defendants, having an interest in that also, yet have obtained and hold two others, and should be compelled to resort to these first, before going on the fund in which the complainants have their sole rights, and then come on the common fund only to the extent of the balance of their debt unsatisfied, after exhaustion of the other and individual securities taken and held by them.

The question is, can this equity be sustained on the facts stated?

The doctrine on this subject may be thus stated: "Where parties, whose legal rights being confined to one fund, would fail to obtain satisfaction of their just claim if left to the course of law, equity interferes in order to afford complete justice by means of what is called marshaling of assets, which is such an arrangement of the different funds, under administration, as that they may as far as possible, without injustice, be applied in satisfaction of the various claims, notwithstanding certain parties have a right to priority of satisfaction out of some one or more of such funds: Wait's Actions and Def., vol. 3, p. 174. As if A has a mortgage upon two different pieces of property,

and B has a mortgage only upon one of them, B may compel A to take satisfaction out of one of them when it will not prejudice A's right to do so: *Ibid.*, 175; or, as the principle is better stated by Chief Justice Marshall, 1 Brock, 266, cited in Law Cases in Eq., vol. 2, p. 218, "a creditor having his choice of two funds, ought to exercise his right of election in such manner as not to injure other creditors who can resort to only one of these funds." This is precisely a case within the principle. A. L. & J. C. Fumbanks have a security for their debt under the first mortgage or deed of trust on the lands conveyed. Complainants also have an interest in this mortgage in proportion to their debts. The first parties, however, have obtained and hold two other deeds of trust on personalty (laying out of view for the present the second conveyance of the land), and as against these securities these complainants have no rights whatever. It is but justice that the creditors having these additional securities shall be compelled to resort to them, and exhaust them before going on the other fund, which would certainly lessen their security to the extent the fund should be appropriated to the doubly secured debt.

It is true this equity is cautiously administered, so as not to trench injuriously upon the contracts of parties or do wrong to the creditor. But when thus qualified, it is one of which no one can complain. In fact it is but little more than the principle of requiring a creditor, who has a debt entitled to share in a fund where others have a like interest with him-

---

---

self, to allow actual payments made on that debt, so
that he shall only share in the common fund to the
extent of what is actually due him.    The only differ-
ence between that case and this is, that he has the
means of payment placed at his disposal by the other
property appropriated specifically to this purpose, and
the court but enforces its sale and appropriation, as
agreed between the parties.    If he had enforced the
securities in his hands, over which he has sole con-
trol according to the terms of the deeds, and realized
the money from the sale, he would be compelled to
reduce his debt by the sum so received before receiv-
ing a *pro rata* of the common fund.    If compelled
by the court to do what he ought to have done, and
he receives the full benefit of the securities he has
taken, he cannot complain nor be injured, and his co-
creditors will be benefited.

We therefore hold, that complainants have the right
to have the personalty conveyed in the subsequent deeds
of trust sold, the deeds enforced, and the proceeds
applied upon the debt of defendants as a credit, before
they can go on the common fund under the first deed
of trust.    The sale of land under the first deed of
trust, however, need not be delayed, if it shall be
seen that it will take all the property in all the deeds
to pay the debts secured, as the purpose is simply to
have the proceeds of the property conveyed under the
second deed of trust appropriated to respondents'
debts, before appropriation of the fund arising from a
sale of the land among the common creditors secured
by the first deed, so that A. L. & J. C. Fumbanks

shall only come in on that fund for the balance due them after the appropriation of the proceeds of the other securities. Their debt will also be credited with any sums paid on it by Fowlkes, or in any way realized by them.

In administering the equities arising under these trusts, it is the duty of the court, so to decree as shall best serve the rights of all the parties, the debtor as well as the creditor. We think, with that view, the court should, in making the sale of the land conveyed, sell the separate tracts, selling first the tract on which Fowlkes and family do not reside, and then, if necessary, the other tract, or so much as may be necessary to pay balance found due the creditors. In selling this last or residence tract, the court may, if desired by Fowlkes and wife, first lay off the homestead, and then the tract may be offered with the homestead reserved, and if this with remainder, after homestead expires, will pay balance of debts secured by first deed, after the other securities have been applied, to A. L. & J. C. Fumbanks' debt, then the homestead shall be preserved; but if not, and the entire interest will be necessary to pay the debts charged, then the tract will be sold not subject to homestead, or including the homestead right, as extinguished for reasons hereinafter given.

As to the effect of the second conveyance, by husband and wife, in trust to secure the debt of respondents, we need but say, that under the case of *Crook* v. *Lunsford,* 2 Lea, 238, the conveyance by an absolute deed and surrender of possession, by husband and

wife, is an extinguishment of the homestead right, and so the first assignee · of the land was held to have the land free from the homestead right. This being so, although the second deed in this case is not an absolute title in equity, but only a security for the debt, the equitable title still being in the conveyor, and the possession not surrendered, would not be *per se* an extinguishment of the homestead as by an abandonment or absolute sale. Nevertheless, as complainants would be entitled to have this deed enforced, and whatever right the trustee obtained sold, and the purchaser would be entitled to possession, as between him and Fowlkes and wife and the trustee, the result would be, that the trust being compelled to be executed, the homestead would then be extinguished, and thus the purchaser under the first deed would get the benefit of the extinguishment. It would be a useless expense and form to make such a sale, by which the purchaser would get nothing. It seems somewhat contradictory, at first thought, that a party claiming under a deed from the husband alone, which did not carry the homestead, should get the benefit of that homestead by a conveyance subsequently made of the homestead by husband and wife, and the conveyee get nothing. But this is probably the only logical result of our cases, which go on the theory that the homestead is not an estate in the land, but a mere right of occupancy or exemption, and, when voluntarily abandoned, or parted with as required by law, ceases to exist. This being so, a party having a prior conveyance of the land subject to homestead,

would necessarily hold under that title free] from the homestead, subsequently abandoned or conveyed, or released by the wife joining in a deed with her husband. The enforcement of this second deed of trust necessarily extinguishes the homestead right conveyed by Fowlkes and wife, and its enforcement is the right of the other parties secured in the first deed.

The result is the chancellor's decree, dismissing complainants' bill, is reversed; the costs of this court to be paid by complainants, the costs below as adjudged by the chancellor.

The case will be remanded to be proceeded in under this opinion.