ADDEN, J.,
delivered the opinion of the Court.
It appears that the appellees on the 30th July 1841, sued out of the Circuit court a subpoena in chancery against the appellant Henry Carrington, as administrator, and the other appellants as children and heirs of John A. Morton deceased, which was returned executed August 7th, 1841, on *514 Henry Carrington, and the rest no inhabitants. On the 21st August 1841, they filed their bill, in which they charge that they are creditors of the intestate; that the administrator alleged there were not assets in his hands sufficient to pay them; that the personal estate had been exhausted in the payment of bond debts binding the heirs; that the real estate of which the intestate had died seized in the county of Halifax, had been sold under a decree of the County-court of said county for the purpose of dividing the proceeds amongst the heirs; that said Carrington had been appointed by the said Court collector of the proceeds of sale, and had collected and then held part thereof, and the residue would be due at a future day. They seek to marshal the assets and to be substituted to the rights of the bond creditors, and satisfied out of the real assets; and pray that Carrington as administrator and as such collector, be made defendant; that as administrator he render an account, and as collector be restrained from paying away or disposing of the funds in his hands or which may come into his hands; and ask that the proceeds arising from the sale be applied to the payment of their debt, and for general relief. Two of the children and heirs were proceeded against as non-residents, by publication; a guardian ad litem was appointed to defend the other two children and heirs as infants, who in December 1842 put in an answer for them.
*At November rules 1841, the bill was taken for confessed as to Car-rington, and as to him the cause set for hearing. At April rules 1843 it was set for hearing as to the non-resident defendants, and came on for hearing at April term 1843, upon the order of publication, the answer of the infants by the guardian ad litem, and the bill taken for confessed as to Henry Carrington; and an interlocutory order for an account was rendered. At the April term 1844 the cause was heard upon exceptions to the report and recommitted. Henry Carrington answered in April 1845; and on the 13th April 1846, the decree appealed from was rendered. In his answer Carrington avers that all the assets which came to his hands as administrator, have been paid out to the creditors; an averment which is sustained by the report of the master commissioner, which shews he is in advance to the estate. He further avers that the money arising from the sale of the land descended to the heirs, and which came to his hands as collector, had been paid out by him to the parties respectively entitled to receive it, in virtue of two orders of the County court made in the suit in which he was appointed collector; that he acted in obedience to the orders of the Court whose commissioner he was. And he alleges that he had no recollection that the subpoena in this cause had been ever served on him; and that he had no knowledge of the existence of. the suit at the time he paid out the money. The record of the County court which he files as an exhibit with his answer, shews that a friendly suit for the sale of the land and distribution of the proceeds was brought in November 1839, and a decree appointing commissioners to sell was rendered during the same term. In January 1841, H. Carrington was appointed collector. At August term 1841, the report of sale was confirmed, and the collector ordered to pay over the amount of the first instalment, after deducting certain allowances to the widow *and children in the proportions fixed by the decree; and at March term 1842 he was ordered to pay over the second instalment; and the report of the commissioner shews that the money was all paid out by him between the 1st February and the 1st November 1842.
In September 1841, after the institution of this suit, the appellees obtained a judgment against the administrator for their debt, subject to a credit of 108 dollars 91 cents, paid on the 27th September 1841. By the commissioner’s report it appears that assets to the value of 700 dollars had been applied by the administrator in the payment of debts binding the heirs.
From the foregoing statement of the facts it is evident that the appellees had a right to be substituted to the shoes of the creditors whose debts bound the heirs, and that the assets should have been marshalled for their benefit. The land had been sold by a decree of the Court at the time they instituted their suit; and it was competent for them to follow the proceeds. Their bill sets out that their debtor was late of the city of New York, the original subpoena is returned no inhabitant as to all the defendants except the administrator; and two of the children and heirs being adults, were proceeded against as non-residents; and from the return on the subpoena and the other circumstances, it is fair to presume the infant children and heirs were also non-residents. The heirs were debtors to the value of the assets descended, and if non-residents, it would have been competent to have proceeded against them by way of foreign attachment, and by a restraining order, or an endorsement on the subpoena, which stands in place of such order, to have attached the proceeds arising from the sale of land. The appellees did not adopt this course. The heirs were not treated as debtors; but the proceeding was to subject the land descended, or the proceeds arising from the sale thereof, as the estate of their deceased debtor within the jurisdiction of the *Court. The heirs were made defendants not as debtors, but as absent defendants having an interest in the subject which the creditor was seeking directly to charge under the equitable jurisdiction of the Court to marshal the assets of a decedent. They were warranted in this course by the case of Tennent v. Patton, 6 Leigh 196, where in a case to marshal the assets, one of the heirs being a non-resident was proceeded against as an absent defendant. But their bill cannot be treated as tantamount to a foreign *515 attachment with a restraining- order. Regularly they should have enjoined the resident defendant from paying over the funds in his hands to those entitled thereto, or have obtained some order from the Court restraining the resident defendant from paying away the funds. This was not done. The resident defendant avers he did not know of the existence of the suit at the time the money was paid away, and that he did not remember the subpcena had ever been served upon him. The subpoena was sued out against him in his character of administrator only, and not against him as collector. It gave him no notice of a proceeding against him for the money in his hands as collector. There is no evidence of actual notice to him, and as he could have had no motive in paying to one in preference to the other claimant, it seems manifest that he has acted in good faith in obedience to the orders of the Court from which he derived his authority, and to which he was responsible; and in ignorance of the claim of the appellees. There is nothing to affect his conscience. If he is to be compelled to pay the money over again, it must result from the application of some stern and inflexible rule of equity, which from reasons of public policy fixes a liability upon him, though he was free from all blame. This it is maintained on the part of the appellees is the case here. The money was paid lite pendente; and therefore there could be no change of subject by the voluntary act of the party so as to affect *the right of the party suing. The doctrine of lis pendens does not depend upon the presumption of notice, but upon reasons of public policy; and where it operates, applies, although there was no possibility of notice of the suit. Newman v. Chapman, 2 Rand. 93.
Treating this as a subject which would be affected by the lis pendens, how does the appellant Carrington stand? No fraud is imputable to him; he has collected a fund as an officer of Court. He was the mere agent of the Court, having no interest in the subject; the Court made an order for him to pay it away and he obeyed it. Can this be treated as a voluntary act of the party calculated to defeat the rights of a suitor in another case. It is said he should have communicated the pendency of the suit to the County court; but this and similar arguments are based on the assumption that he is presumed to have notice of the suit and the prayer of the bill; and presuming he had notice, he is then to be treated as if he actually had it, and his conscience is to be affected thereby. But notice in fact is denied, is not proved, and is against all the presumptions of the case; nor is notice actual or presumptive at all necessary, if this is a case for the application of the doctrine of lis pendens. But where, as in this case, an officer of a Court is made a defendant, who as agent of the Court collects money to be held subject to its control and is liable to attachment instantly for disobedience to its orders, the duty of obedience is a paramount obligation; and he cannot be held responsible for such obedience by the application of the general doctrine of lis pendens. The creditors were the parties in default, and cannot invoke the application of the principle where it will operate so harshly. Their suit was originally irregularly instituted. They should have made themselves, b3' petition or bill, parties to the proceeding in the County court, in which Court the fund had been realized; and then proper measures would have been taken *to secure it. They had full notice of this proceeding, for they refer to it in their bill. Railing in this, they should either have proceeded by foreign attachment and obtained a restraining order, or made the proper endorsement on the subpoena, or if they elected to proceed to charge the subject and treat the heirs as absent defendants, they should have enjoined the defendant from paying over the money, or taken some measures to secure the fund in his hands or to have it paid into Court. Instead of doing so, they seem to have contented themselves with the institution of their suit, relying upon the doctrine of the lis pendens, whilst the collector in ignorance of any claim was permitted to go on and pay away the money. The claim to charge him has little foundation in equit3T, and I think his duty to obey the decrees of the Court, whose agent he was, was a paramount obligation, and relieves him from all liability growing out of the doctrine of lis pendens. And therefore that so much of the decree as charges Henr3r Car-rington for the money paid out by him as collector in obedience to the orders of the County court, is erroneous. The decree was also erroneous in not giving the infants a day to shew' cause against it after arriving at full age; but as the decree against Car-rington and the various defendants is joint, and must be reversed, and such decree entered as the Court below' should have done, the leave can still be reserved.
Reversed with costs; and this Court proceeding to render such decree, &c. ; bill dismissed as to Henry Carrington without costs. It is further adjudged and ordered that the plaintiffs recover (as in former decree from several defendants, leaving out Carrington) and leave is reserved to the infants to shew cause against this decree within six months after they respectively attain full age.
MARSHALING ASSETS.
I. Definition.
II. Nature of Doctrine.
A. Conditions Precedent.
B. Marshaling- in Aid of Subsequent Purchasers and Incumbrancers.
1- Vendor’s Lien.
2. Between Mortgagees.
8. As against Bona Fide Purchasers.
*516 0. Rule Qualified.
1. Rights of Paramount Creditors.
3.Rights of Third Parties.
3. Liabilities of Paramount Creditors.
a. Release.
h. Laches, Forbearance, Neglect to Enforce Lien.
III. Method of Enforcing Doctrine.
A.Subrogation.
IV. Application of Doctrine.
A.In Respect of Homestead Lands.
V. Inverse Order of Alienation.
A. Lands Sold Contemporaneously.
B. Necessity of Warranty.
VI. Pleading and Practice.
A. Trust Liens.
B. Bill by Infant Heirs.
C. Parties.
VII. Marshaling Decedents' Estates.
A. Liability of Heirs and Devisees.
1. Common-Law Rule.
3. Statutory Rule.
B. Liability of Purchasers from Heirs or Dev-isees.
C. Liability of Legatees.
1. Devastavit.
D. Order of Liability of Assets.
1. In General.
3. personal Estate. aJLiability for Payment of Debts.
b. Liability for Payment of Legacies.
3. Real Estate Devised for Payment of Debts.
a.1 Contribution by'Devisees.
b. Effect of Trust to Pay Debts upon Statute of Limitations.
4.£Real Estate Descended.
5. Specific Devises or Bequests Subject to Charge of Debts.
a.Contribution under Charge of Debts.
6. General Legacies and Devises.
7. Real Estate Devised by Will.
a. Contribution between Specific Legatees and Devisees.
E. Exoneration of Encumbered Lands.
F. Charge of.Debts and Legacies.
1. Chargelof Debts.
a. Direction for Payment of Debts.
b. Devise to Executors.
c. Exoneration of Personal Out of Real Estate.
d. Personal Liability of Devisee upon Acceptance.
3. Charge of Legacies.
a.llntention of Testator.
b. Circumstances Tending to Show Intention.
c. Effect of Residuary Clause.
(1) Blending Real and Personal Estate in Residuary Clause.
d. Charge on Lands Devised.
(1) Direction for Payment of Legacies.
e. Lands Devised to Executor.
f. Enforcement of Charge.
G. Rule of Marshaling Applied.
1. In Whose Favor.
a. Between Specialty and Simple Contract Creditors.
b. In Favor of Legatees.
c. In Aid of Devisees.
Cross References to Monographic Notes.
Executors and Administrators. Subrogation.
I. DEFINITION.
“To marshal assets, in the sense of the courts of equity, is to make such arrangement of the different funds under administration as shall enable all the parties having equities thereon to receive their due proportions, notwithstanding any intervening interests, liens, or other claims of particular persons to prior satisfaction out of a portion of these funds.” 4 Min. Inst. (3d Ed.) 1361.
II. NATURE OF DOCTRINE.
The rule as to marshaling assets is that if one party has a lien or interest in two funds for his debt, and another party has a lien on or interest in one only of the funds for another debt, the latter has a right in equity .to compel the former to resort to the other fund, in the first instance, for satisfaction, if that course is necessary for the satisfaction of the claims of both parties; provided always this course does not trench upon the rights or operate to the prejudice of the creditor entitled to the double fund. Russell v. Randolph, 36 Gratt. 705; Vance v. Monroe, 4 Gratt. 52; Jones v. Phelan, 20 Gratt. 229; Schultz v. Hanshrough, 33 Gratt. 582; Hudson v. Dismukes, 77 Va. 243; Watkins v. Dupuy, 87 Va. 87, 12 S. E. Rep. 294; Stephenson v. Taverners, 9 Gratt. 398; Tennent v. Pattons, 6 Leigh 212; Ball v. Setzer, 33 W. Va. 444, 10 S. E. Rep. 798; McCrum v. Lee, 38 W. Va. 583, 18 S. E. Rep. 757; Bank v. Wilson, 25 W. Va. 242; Wiley v. Mahood, 10 W. Va. 207; 1 Bart. Ch. Pr. (2d Ed.) 92; 4 Min. Inst. (3d Ed.) 1361; 3 Min. Inst. (2d Ed.) 584; Alston v. Mnnford, 1 Brock. 266; Rixey v. Pearre, 89 Va. 113, 15 S. E. Rep. 498.
And this is true, even though in its consequences harm results to another creditor having a lien on the property later In date. Ball v. Setzer, 33 W. Va. 44, 10 S. E. Rep. 798.
“This principle is of frequent application in equity whenever it is required in order to work exact justice, even though the hill were not framed specially to secure that relief. But the bill is also often drawn with that express object, and then it should be in behalf of the plaintiff and all other creditors who shall choose to come in and contribute -to the costs of the suit; and where it is to marshal assets and for their due administration, the heirs and devisees of the testator should he made parties. (1 Bart. Ch; Pr., sec. 92, p. 293; Stephenson v. Taveners, 9 Gratt. 398.)” 4 Min. Inst. (3d Ed.) 1362.
Foundation of Doctrine. — The doctrine of marshaling assets is founded upon the maxim sic utcre tuo ut alienum non, laedos. Hudson v. Dismukes, 77 Va. 242; Rixey v. Pearre, 89 Va. 113, 15 S. E. Rep. 498.
Doctrine Much Favored. — “This doctrine of marshaling assets is a long-settled, favorite, and highly cherished branch of equitable jurisdiction. It is founded on the best and purest principles, and productive of that evenhanded justice, which, to the greatest practicable extent, enforces the maxim suum cuiaue tribuito.” Tennent v. Pattons, 6 Leigh 196.
Marshaling Securities. — “The same principle is applied in marshaling securities. Thus, if A has a mortgage on two tracts of land for the same debt, and B has a mortgage on hut one of the tracts for another debt, B has a right in equity to require A to have recourse in the first instance to the tract that B cannot touch, at least when it will not prejudice A’s rights nor improperly impair his remedies.” 4 Min. Inst. (3d Ed.) 1362.
Illustration. — Upon a hill by a judgment creditor to subject the lands of his debtors to satisfy a judg *517 ment obtained against them as the maker and endorsers of a note, whose liability inter sese are successive, it is error to decree a sale of the lands of the last endorser before resorting to the lands of the maker and prior endorser of such note, unless to require the plaintiff to exhaust the estate of those debtors, whose liability is prior to the last endorser, will in the opinion of the court unduly delay the plaintiff in the collection of his debt. Shenandoah Valley Nat. Bank v. Bates, 20 W. Va. 211.
A. CONDITIONS PRECEDENT. — To invoke the the doctrine of marshaling securities both sources of payment must belong to the common debtor. The equity is not invoked against the doubly secured creditor, but against the common debtor, and cannot be invoked against the common debtor if that course would trench upon the rights, or operate to the prejudice, of the creditor entitled to the double fund. Blakemore v. Wise, 95 Va. 272, 28 S. E. Rep. 332; Russell v. Randolph, 26 Gratt 717, 718. See 3 Va. Law Reg. 744; Rixey v. Pearre, 89 Va. 113, 15 S. E. Rep. 498.
Social and Individual Assets. — In order for a creditor who has a lien upon one fund to be entitled to substitution to the right of a creditor who has a lien upon that and another fund, it is a necessary condition, among other things, that both funds upon which the prior creditor's claim is secured should be the property of the same debtor, and this condition does not exist where the assets of a partnership constitute one of the funds, and the individual property of a member of the partnership constitutes the other fund, unless that partner has, in equity, become entitled to the partnership assets and become primarily liable for the partnership debts. Guggenheimer & Co. v. Martin & Co., 93 Va. 634, 25 S. E. Rep. 881; Rixey v. Pearre, 89 Va. 113, 15 S. E. Rep. 498.
B. MARSHALING IN AID OF SUBSEQUENT PURCHASERS AND INCUMBRANCERS.
1. Vendor's Lien. — Upon this principle of marshaling assets, where payments have been made by an executor, to the vendor of land purchased by the ancestor, and not conveyed to him, the lien of the vendor will be marshaled. Alston v. Munford, 1 Brock. 266, Fed. Cas. No. 267.
Where one of two joint purchasers of real property, who have given their notes for the payment of the purchase money, becomes insolvent, and the other pays more than his moiety of the purchase money, such latter party has a lien on the property to reimburse him for all that he has paid above one moiety of the purchase money, in preference to the creditors of the insolvent debtor claiming under a deed of trust from him, unless they appear to be purchasers without notice. Tompkins v. Mitchell, 2 Rand. 428.
Principal Debtor Insolvent. — Where a vendor’s lien is retained to secure the payment of several bonds given for the purchase money of lands, and a judgment is obtained at law by the assignee of one of those bonds against the principal on the bond and his surety, the surety cannot come into a court of equity and compel such assignee to exhaust his vendor’s lien before enforcing the collection of his judgment by execution against the surety, although it is shown that the principal debtor is insolvent. Armstrong v. Poole, 30 W. Va. 666, 5 S. E. Rep. 257.
2. Between Mortgagees.-H: A has two mortgages, and B has one of the same subjects mortgaged to him, B will be aided by equity, in throwing A upon that subject which B cannot touch. Tennent v. Pattons, 6 Leigh 196.
3. As against Bona Fide PURCHASERS.^The equity of a judgment creditor to marshal the assets, as a means of obtaining payment out of a fund that is not subject to the lien of a judgment, will not be enforced against a tona fide purchaser, unless the equity springs out of some contract between the purchaser and vendor. McClaskey v. O’Brien, 16 W. Va. 791; Withers v. Carter, 4 Gratt. 407; Schultz v. Hansbrough, 33 Gratt. 582.
But where the purchaser buys subject to an existing incumbrance, or undertakes to pay it off in satisfaction of the purchase money due his vendor, the case is very different. He then becomes the principal debtor and as between himself and the vendor at least, he is primarily bound to discharge the incumbrance, and the vendor having a right as against him to require the obligation to be performed, the subsequent incumbrancer is entitled to stand in the vendor’s shoes and have his equities administered for his relief. Schultz v. Hansbrough, 33 Gratt. 582.
C.RULE QUALIFIED.
1. Rights oe Paramount Creditors. — The rule that when a creditor has a lien on two funds, and another creditor has a subsequent lien on one of 'the funds only, equity will require the former to resort, in the first instance, to the fund upon which the subsequent creditor has no lien, for the satisfaction of his debt is subject to the qualification that such course must appear to be necessary for the payment and satisfaction of both debts, and must not operate to prejudice the rights of the first creditor to the double fund. Neither must there be any unreasonable doubt of the sufficiency of the one fund to satisfy the debt of the first creditor. Hudkins v. Ward, 30 W. Va. 204, 3 S. E. Rep. 600 ; Schultz v. Hansbrough, 33 Gratt. 582; Rixey v. Pearre, 89 Va. 113. 15 S. E. Rep. 498; Miller v. Holland, 84 Va. 652, 5 S. E. Rep. 701.
Paramount Creditor Delayed. — Where a creditor can resort to two funds for payment, while another creditor can resort to but one of them, the first creditor cannot be delayed in enforcing his debt, but may resort to the fund most easily accessible, and the other creditor who has been prevented from resorting to that fund must take his place as to the other. Hudkins v. Ward, 30 W. Va. 204. 3 S. E. Rep. 600.
2. Rights oe Third Parties. — Marshaling will not be enforced to the prej udice of a third party. As subrogation is an equity, it will not be enforced where the effect will be to prejudice or impair the rights of third persons, it being well settled that where both parties have an equal claim to the consideration of a chancellor, the law will be suffered to take its course. McClaskey v. O’Brien, 16 W. Va. 792; Hall v. Hyer (W. Va.), 37 S. E. Rep. 594; Lee v. Swepson, 76 Va. 173; Rixey v. Pearre, 89 Va. 113, 15 S. E. Rep. 498; Miller v. Holland, 84 Va. 652, 5 S.E.Rep. 701.
Right Indefeasible by Subsequent Parties. — “Though it is broadly stated that marshaling will not be enforced to the prejudice of third parties, yet that statement is too broad, for it seems that, when once the right of a creditor having a lien on one property to compel another creditor having a lien on two properties to subject, in the first instance, the property on which the junior creditor has no lien, exists, it is good against a third subsequent lienor, though not against one antedating the one who asks the *518 marshaling-, because he had this right when the third party’s right began.” Note by Brannon, J. Woods v. Douglas, 46 W. Va. 657, 33 S. E. Rep. 771; 2 Beach. Mod. Eq. Jur., sec. 785, say this is the general rule.
3. Liabilities or Paramount Creditor.
а. Belease. — Ti a prior judgment lienor releases the property subject to a second deed of trust, the proceeds of which are amply sufficient to satisfy his judgment lien, he cannot enforce payment of such judgment lien out of the property subject to a first deed of trust until such latter trust is fully satisfied. First Nat. Bank of Huntington v. Simms (W. Va.), 38 S. E. Rep. 525.
Thus where a defendant sold a mill and took a mortgage on the mill and also on the purchaser’s land which latter mortgage was more than enough to pay his debt, and afterwards the purchaser gives a deed of trust on the mill, whereupon the defendant comes in the nighttime and ships the mill beyond the jurisdiction of the court, selling it for a small amount, it was held that, since the defendant deprived the trust creditors of the right to have the securities marshaled, a court of equity properly rendered judgment against such defendant for the difference between the amount for which the mill sold and what it would have brought if undisturbed. McCrum v. Lee, 38 W. Va. 583, 18 S. E. Rep. 757.
б. Laches, Forbearance, Neglect to Enforce Lien — It seems that mere laches, forbearance, or neglect, on the part of the senior creditor, to enforce his lien against one of the two funds on which his debt is charged, without any fraudulent combination with the debtor to defeat his creditors, will not operate pro tanto as a release of the doubly charged fund from the lien of the paramount incumbrance. Sandidge v. Graves, 1P. & H. 101.
III.METHOD OF ENFORCING DOCTRINE.
A. SUBROGATION. — A creditor who has two funds open to him, while another has but one, cannot take the latter fund without placing that one exclusively within his reach at the disposal of the creditor whom he has deprived of the means of payment If he refuses or neglects to fulfill this duty, equity will decree subrogation. Hudkins v. Ward, 30 W. Va. 204, 3 S. E. Rep. 600; Alston v. Munford, 1 Brock. 266, Fed. Cas. No. 267; Rixey v. Pearre, 89 Va. 113, 15 S. E. Rep. 498.
A mortgagee of lands and slaves, cannot be compelled to resort to a sale of the slaves before he shall disturb the possession of bona Me purchasers of the lands from the mortgagor; but the decree against such purchasers ought to permit them, after satisfying the claim of the mortgage, to seek indemnity out of the mortgaged slaves, or the estate of the mortgagor, or any other person liable to such demand, so far as the mortgagee might be able to charge such party, or otherwise. Mayo v. Tomkies, 6 Munf. 520.
“It being the object of a court of equity, that every claimant upon the assets of a deceased person, shall be satisfied, as far as such assets can, by any arrangement, consistent with the nature of the respective claims, be applied in satisfaction thereof, it has long been settled, that where one claimant has two funds to resort to, and another only one, the first shall resort to that fund on which the second has no lien; or the second shall be pro tanto substituted to this last fund.” Tennent v. Pattons, 6 Leigh 212.
IV.APPLICATION OF DOCTRINE.
A. IN RESPECT OF HOMESTEAD LANDS.— Where homestead has been set apart, and there is not sufficient property unexempt to pay the debts, all creditors must share ratably in such property, and then those creditors as to whom homestead is waived are entitled to satisfaction out of the homestead for the balance of their debts unpaid. Scott v. Cheatham, 78 Va. 82; Strange v. Strange, 76 Va. 240; Russell v. Randolph, 26 Gratt. 716, disapproved.
Decedent’s entire estate may be subjected to a homestead waived debt, but the portion not embraced in the homestead deed shall be first subjected. Strange v. Strange, 76 Va. 240. See Scott v. Cheatham, 78 Va. 82.
V.INVERSE ORDER OF ALIENATION.
Generally where land subject to an encumbrance is sold successively in parcels, each of them will be liable in the inverse order of alienation. McClaskey v. O’Brien, 16 W. Va. 791; Conrad v. Harrison, 3 Leigh 532; McClung v. Beirne, 10 Leigh 394; The Lynchburg Perpetual B. & L. Co. v. Fellers, 96 Va. 337, 31 S. E. Rep. 505; Miller v. Holland, 84 Va. 652, 5 S. E. Rep. 701.
In the case of Beverley v. Brooke, 2 Leigh 425, it was decided that where a judgment is obtained against a debtor, who afterwards aliens his lands to divers alienees by divers conveyances, all the lands in the hands of the several alienees are alike liable to the judgment creditor, and must contribute pro rata. This case, however, was doubted, in Conrad v. Harrison, 3 Leigh 532, and expressly overruled in M’Clung v. Beirne, 10 Leigh 394, 403; and the above rule laid down.
See monographic note on “Judgments” appended to Smith v. Charlton, 7 Gratt. 440.
A. LANDS SOLD CONTEMPORANEOUSLY. — But where the different parcels of land are sold contemporaneously, they must contribute pro rata to the satisfaction of the judgment. Harman v. Oberdorfer, 33 Gratt. 497.
B. NECESSITY OF WARRANTY — Where a grant of part of the land covered by an encumbrance con. tains a covenant of warranty, there can be no doubt that the burden is to be borne exclusively by the residue of the land in the hands of the grantor. This results not from the technical operation of the covenant, but from the evidence which it affords of the intent; and the effect will be the same, if it appears unmistakably from any part of the deed or from a collateral writing, that the vendee is to have an unencumbered title. And perhaps where there is not a covenant of general warranty, the same rule should prevail, unless there is evidence of an opposite design. McClaskey v. O’Brien, 16 W. Va. 791.
Grant with Warranty to Volunteer. — It seems that a paramount j udgment will not be marshaled as against a grant with warranty to a volunteer, in order to leave the real estate of the grantor free for the discharge of a judgment which has been entered subsequently to the grant. McClaskey v. O’Brien, 16 W. Va. 791, 841.
VI.PLEADING AND PRACTICE.
A. TRUST LIENS. — It is error for the circuit court not to determine, by marshaling the same out of which of the proceeds of several properties various judgments and trust liens should be paid according to their priority. First Nat. Bank of Huntington v. Simms (W. Va.), 38 S. E. Rep. 525.
*519 B. BILB BY INFANT HEIRS. — Upon a Mil against infant heirs, to marshal assets, it is error to decree a sale of the lands descended, -without giving- the infant heirs a day after their attainment to full age, to show cause ag-ainst it Tennent v. Hattons, 6 Leigh 196.
G. PARTIES. — A bill to marshal assets and for their administration, should be on behalf of the plaintiff and all other creditors, and the heirs and devisees of the testator should be parties. But if the proper parties are not made, the bill should not be dismissed, but the plaintiff should have leave to amend and make the proper parties, unless a decree for an account had been made in some other creditor’s suit having the same object. Stephenson v. Taverners. 9 Gratt. 398.
VII. MARSHALING DECEDENTS’ ESTATES.
A. LIABILITY OF HEIRS AND DEVISEES.
1. Common-Law Rum».--At common law, land could be charged with a decedent’s debts (other than debts of record and debts of specialty binding the heirs expressly, for which an action lay at law) only in a court of chancery, either in. consequence of a will or some other trust so providing, or by means of a bill to marshal assets, that is, to arrange them in such order as to make them go as far as possible towards the payment of all debts. Lands, therefore, at common law, except as to debts of record and of specialty binding the heirs, were always equitable assets. 3 Min. Inst (2d Ed.) 583; Frasier v. Littleton, Jan. No. 1902, Va. Law Reg. 620.
2. Statutory Rum». — Statutes, however, have done away with the distinction between debts chargeable on decedent’s lands at common law and simple contract debts, and have made real as well as personal estate subject to the just debts of the intestate. Bnt the object of these statutes was not feo disarrange the order of liability of the assets of the decedent’s estate, which by a long line of adjudication has become lirmly settled, as we shall see later, Frasier v. Littleton, Jan. No. 1902, Va. Law Reg. 620 ; Laidley v. Kline, 8 W. Va. 218; McCandlish v. Keen, 13 Gratt. 615; Pierce v. Graham, 85 Va. 235.
But Va. Code 1887, sec. 2665, making real estate of decedent’s assets for the payment of debts, does not give a devisee of encumbered land the right of contribution from devisees of unencumbered land. Frasier v. Littleton, Jan. No. 1903 of Va. Law Reg. 620.
Debts Subsequently Discovered. — Executors, who in ignorance of debts against the decedent, have paid over the proceeds of the personal property to the devisees, are entitled to have the devisees subjected in the first place to pay the amount to the creditor. Lewis v. Overby, 31 Gratt. 601.
B. LIABILITY OF PURCHASERS FROM HEIRS OR DEVISEES. — Where real estate in the hands of heirs is sought to be subjected to the judgment of the decedent ancestor’s debts, and that portion of it assigned to one of the heirs before the commencement of the suit has been aliened to a tona fide purchaser, whether absolutely or in trust to pay his debts, and that heir has become insolvent, the rest of the real estate in the hands of those heirs who have not aliened it, is liable not only for the proportionate share which each heir would at first have borne, but for the whole debts of the decedent, to be contributed by each one in proportion to the value and extent of the land descended to him. Ryan v. McLeod, 32 Gratt. 367; Lewis v. Overby, 31 Gratt. 601, and note.
0. LIABILITY OF LEGATEES. — A legatee is entitled to nothing until the debts of the testator are paid; he has no claim except upon the bounty of the testator : if he receives payment before the debts are paid, he takes subject to the condition of making restitution, if it becomes necessary to satisfy creditors ; and no dealing of the executor with him or advancement made to him, can in any manner affect or modify the liability of the testator’s estate to the payment of his debts. Leake v. Leake, 75 Va. 794. See Dunn v. Amey, 1 Leigh 465.
“Assets are always bound to the creditor, and he may pursue them in the hands of the legatee even though the testator’s effects would have been sufficient to pay both debts and legacies. * * The legatee takes subject to the liability of being compelled to refund at the suit of a creditor.” Davis v. Newman, 2 Rob. 668.
Some Legatees Insolvent. — -if some of the legatees are insolvent, the others will be required to make good the deficiency, to the extent of what they have received. Leake v. Leake, 75 Va. 794; Hopkirk v. Dennis, 2 Munf. 326; Ryan v. McLeod, 32 Gratt. 367.
1. Devastavit.
Deficiency Caused by Devastavit. — Although the executor had in hand sufficient assets to pay both debts and legacies, and although a portion of the assets was actually paid to the legatees and another portion set apart for a creditor, which was wasted by the executor, still the creditor had a right to demand restitution from the legatee. Leake v. Leake, 75 Va. 794.
Participation by Distributees in Devastavit. — Where the distributees, by participating with the administrator in making distribution of the personalty among themselves, aid the administrator in the commission of a devastavit, they are of course liable. Watts v. Taylor, 80 Va. 627.
Voluntary Payments by Executor. — Legatees cannot be compelled to refund to an executor where he, mistaking the value of the assets, voluntarily paid them their legacies, there being no creditors of the decedent, but his estate turning out inadequate for the payment of legacies. Davis v. Newman, 2 Rob. 664.
Refunding by Legatees. — Where legatees are called upon to refund at the suit of a creditor, the general principle is that all must be before the court and the burden apportioned among them, if it can be done without material delay or injury to the creditor. Leake v. Leake, 75 Va. 794.
D. ORDER OF LIABILITY OF ASSETS.
I. In General. — The order in which the different kinds or subjects of property constituting the estate of a deceased testator, and which are liable to the payment of debts, will be applied, seems to be pretty clearly settled by the various adiudications that have been made upon the subject. The first to be so applied, is the personal estate at large not exempted by the terms of the will or necessary implication. Next to it, real estate or an interest therein expressly set apart by the will for the payment of debts. Next, real estate descended to the heir. After it, property, real or personal, expressly charged with the payment of debts, and then subject to such charge, specifically devised or bequeathed. If these prove inadequate, then general pecuniary legacies, and after them specific legacies, both classes ratably; and in the last resort real estate devised by the will. Cranmer v. McSwords, 24 W. Va. 594; Frasier v. Littleton, Jan. No. 1903 of Va. *520 Law Reg. 620; Elliott v. Carter, 9 Gratt. 541; Laidley v. Kline, 8 W. Va. 218; 3 Min. Inst. (2d Ed.) 584.
where the testator charges his debts on his personalty only, the order of applying his estate to the payment of his debts is: (1) Personalty at large; (2) residuary legacies; (3) general pecuniary legacies; (4) specific legacies; and lastly, real estate devised by will. And where the residuary legacy is bequeathed to the executor, and he takes and consumes it, leaving the testator’s debts unpaid, his sureties are liable for the amount thereof before real estate devised by will can be subjected. Edmunds v. Scott, 78 Va. 720, citing Elliott v. Carter, 9 Gratt. 549.
2. Personal Estate.
a. Liability for Payment oft Debts — The well-settled general rule is that the personal estate is the natural and primary fund for the payment of debts, and must first be exhausted before the real estate can be made liable; nor will it be exonerated by a charge on the real estate, even where there is a specific lien for a debt on the real estate, unless .there be expressed words, or a plain intent, in the will to make such exoneration. Swann v. Housman, 90 Va. 816, 20 S. E. Rep. 830; New v. Bass, 92 Va. 383, 23 S.E. Rep. 747; Elliott v. Carter, 9 Gratt. 549; Leake v. Leake, 75 Va. 792; Pleasants v. Flood, 89 Va. 96, 15 S. E. Rep. 504; McLoud v. Roberts, 4 H. & M. 443; Suckley v. Rotchford, 12 Gratt. 60; Saddler v. Kennedy, 26 W. Va. 636.
Generally, the personal assets of an intestate, so far as they have not been administered, should be administered under the direction of the court, and applied to the payment of the debts of the intestate, and in relief of the realty .which descended to the legal heir in the suit or proceeding, to subject the realty to the payment of debts of the decedent. Laidley v. Kline, 8 W. Va. 218.
“There is no doubt that land descended to the heir is liable for the debts of the ancestor. * * * But before the land descended to the heir can be charged with the debts of the ancestor, the personal property belonging to the estate of the ancestor, must first be applied.” Sommerville v. Sommerville, 26 W. Va. 484.
Bond Debt of Devisor. — Lands devised (without any specific charge by will or deed) ought not to be charged in equity to satisfy a bond debt of the de-visor, until the personal estate is exhausted, including a remainder in slaves, expectant upon an estate for life of the testator’s widow. Foster v. Crenshaw, 3 Munf. 514.
In equity, whether the lands be charged by the will, or the bond, of the ancestor, creditors must exhaust the personal estate, before they can resort to the lands. Garnett v. Macon, 6 Call 308.
General Charge — Personalty Exhausted, — Where a testator charges all of his estate with the payment of debts, if, after the personal estate is exhausted, there remains a debt against the estate, it will be a charge on the real estate. Hudgin v. Hudgin, 6 Gratt. 320.
Realty and Personalty Equally Charged. — It seems to be settled that though personal property is applicable to the payment of debts before real property, when neither species is expressly charged by ■ the terms of the will, yet when both are equally and expressly charged they stand on the same footing, and each must be applied in the payment of debts pro rata according to their respective values. Murphy v. Carter, 23 Gratt. 477; Elliott v. Carter, 9 Gratt. 541; Cockerille v. Dale, 33 Gratt. 49.
Creditors Delayed for Long Time. — Though as a general rule the personalty dedicated by the will for the payment of debts must be taken before going against the lands devised, still it has been held that where the creditors have been delayed a long time (15 years), and the personal estate dedicated by the will proves insufficient for thepaymentof the debts, and the efforts to realize from the out-lands directed by the will to be sold for that purpos.e, have proved abortive, then the lands of devisees not charged by the will may be subjected ratably for the discharge of the debts. Bell v. McConkey, 82 Va. 176. See also, Max Meadows L. & Imp. Co. v. McGavock, 96 Va. 131, 30 S. E. Rep. 460.
b. Liability for Payment of Legacies. — The personalty is not only the primary, but the only fund liable for the payment of legacies, unless they are charged upon the realty by express direction or by necessary implication. What language will amount to an express charge must always be a matter of construction and interpretation, depending upon the terms employed in each individual case. A charge will be implied if the language of the will indicates that the testator intended the legacies to be paid, knowing that his personal estate would be insufficient for that purpose, or if it appears that in giving the legacies he had the real estate in mind. Smith v. Mason, 89 Va. 713, 17 S. E. Rep. 3; New v. Bass, 92 Va. 383, 23 S. E. Rep. 747; Todd v. McFall, 96 Va. 754, 32 S. E. Rep. 472; Lee v. Lee, 88 Va. 805, 14 S. E. Rep. 534; Crouch v. Davis, 23 Gratt. 62; Lewis v. Thornton, 6 Munf. 87.
Where the testator gives legacies without directing who shall pay the same, or out of what fund they shall be paid, the personal estate being the primary fund for the payment of legacies, the legal presumption is, that he intended they should be paid out of his personal estate only, and if that is not sufficient, the legacies fail. Read v. Cather, 18 W. Va. 264.
Where a will provided for the payment of a legacy from the testator’s personal property, the legatee is not entitled to payment from lands on which there was a vendor’s lien which was paid from the personal estate as a debt of the estate, thereby rendering such property insufficient to pay the legacy. Todd v. McFall, 96 Va. 754, 32 S. E. Rep. 472.
Exoneration of Personalty. — Charging the land does not exonerate the personalty; to accomplish that result it must appear that the testator intended not merely to charge the realty, but to discharge the personalty, and this intention may be shown where there are express words or a plain intent in the will to make such exoneration. New v. Bass, 92 Va. 383, 23 S. E. Rep. 747; Elliott v. Carter, 9 Gratt. 549; Swann v. Housman, 90 Va. 816, 20 S. E. Rep. 830.
3. Real Estate Devtsed eor Payment oe Debts. —See ante, this section, 1. In General.
a. Contribution by Desoisees. — The legatees have no right to call upon the devisees to contribute to the payment of their legacies unless the real estate devised be expressly charged. Allen v. Patton, 83 Va. 255, 2 S. E. Rep. 143; Elliott v. Carter, 9 Gratt. 550. See also, Gaw v. Huffman, 12 Gratt. 628.
b. Effect of Trust to Pay Debts upon Statutes of Limitations. — A devise of real estate for the payment of debts will not afiect the operation of the statute of limitations upon such debts, whether they are due at the testator’s death or not, unless the contrary intention on his part plainly appears. Johnston v. Wilson, 29 Gratt. 379. The court in this case further said : “In some of the earlier cases it was held *521 that a devise for the payment of debts had the effect of reviving debts already barred by limitation; but this doctrine has been long since exploded, and it is now held that such a devise does not take a debt out of the operation of the statute. Burcke v. Jones, 2 Ves. & Beam. 275; 7 John. Ch. R. 293; Tazewell v. Whittle, 13 Gratt. 329 ; Baylor v. Dejarnette, 13 Gratt. 152 ; 1 Rob. Pr. 346.”
Where a testator devised a large real and personal estate to his wife and children ; charged the portion of one of his sons with the payment of 1,500 pounds sterling towards his debts ; directed sundry tracts of lands to be sold, and the monies arising therefrom, as well as from loan office certificates, or otherwise (after payment of his just debts), to be equally divided among his six sons. On a bill brought by one of the creditors of the testator, the statute of limitations being pleaded, and the complainant not having shown that he came within any of the exceptions of the act, it was held that the statute ought not to operate to prevent a recovery of so much of the specific fund as remained undis-posed of, but that it would be a bar to a recovery out of the general fund. Lewis v. Bacon. 3 H. & M. 89.
Trust of Personalty Inoperative. — But a provision in a will that the money arising from the sale of the testator's personal property, after payment of his just debts, shall be applied to certain purposes, does not create a trust for the payment of the debts, nor take any debt out of the operation of the act of limitations. Brown v. Griffiths, 6 Munf. 450.
Debts Barred at Testator’s Death. — in Tazewell v. Whittle, 13 Gratt. 347, it was said that in Lewis v. Bacon, 3 H. & M. 89, it was held that a debt barred at the time of the testator’s death was, to some extent, revived by a trust for the payment of debts out of the real estate, but that case was decided in 1808 before the decision in Burcke v. Jones, 2 Ves. & Beam. 275, and ought not to be considered as settling the law.
A trust created by will for the payment of debts by a general direction that all the testator’s debts shall be paid, extends only to such as he was bound in conscience to pay. Hence, an undertaking which is merely nudum pactum is not comprehended, and may be barred by the act of limitations. Chandler v. Hill, 2 H. & M. 124.
4. Real Estate Desoended. — See ante, this section, 1. In General.
Quaere, whether, and under what circumstances, a court of equity can decree a sale of land descended or devised (without any specific lien, or any charge, either general or special, by a conveyance or will of the ancestor or devisor), to satisfy a bond, ora simple contract creditor, claiming on the principal of marshaling assets. Especially can such decree be made, in any such case, where the rents and profits of the land are sufficient to keep down the interest accruing on the debt. Mason v. Peter, 1 Munf. 437.
Rights of Simple Contract Creditors. — A simple contract creditor shall receive out of the real assets descended to the heirs at law as much as has been paid to bond creditors out of the personal assets. Haydon v. Goode, 4 H. & M. 460.
Rents and Profits. — But upon a bill by creditors of a decedent against his administrators, and heirs to marshal assets, the court may decree a sale of the lands descended to the heirs, but it is not bound, and ought not to decree such sale, if the rents and profits of the lands will satisfy the debts within a reasonable time, especially if the heirs be infants-Tennent v. Pattons. 6 Leigh 196; Mason v. Peter, 1 Munf. 437.
Parties to Suit to Subject Lands Descended. — In a suit to subject lands, descended to the heir, to the payment of the debts of the ancestor, the personal representative of the ancestor is a necessary party. Sommerville v. Sommerville, 26 W. Va. 484.
5. Specxpic Devises or Bequests Subject to Charge of Debts. — See ante, this section, 1. In General.
a. Contribution under Charge of DeMs.- Tt seems to be settled that though personal property is applicable to the payment of debts before real property, when neither species is expressly charged by the terms of the will; yet when both are equally and expressly charged they stand on the same footing, and each must contribute its ratable share to the common burden. Murphy v. Carter, 23 Gratt. 477; Elliott v. Carter, 9 Gratt. 541; Cockerille v. Dale, 33 Gratt. 45.
6. General Legacies and Devises. — See ante, this section, 1. In General.
7. Real Estate Devised by Will, — See ante, this section, 1. In General.
a. Contribution between Specific legatees and Devisees. —It was said by Lee, J., in Elliott v. Carter, 9 Gratt. 550, that “In the case of Long v. Short, 1 P. Wms. 403, it would seem to have been held that specific legatees and devisees of real property not charged with payment of debts, were bound to contribute ratably for payment of debts due by specialty. But the authority of this case has been greatly doubted; 2 Jarman 547n, b; and it would appear to be greatly shaken, if not entirely overthrown by the cases just cited, and especially the case of Mirehouse v. Scaife, 2 Mylne & Craig 695, in which the distinction endeavored to be maintained between specific and residuary devisees is utterly repudiated, and the principle applicable to both held to be identical.”
Apportionment of Burden. — The court should subject each devisee for his proportion of the debt, according to the value of the land devised to him or her, and direct a sale of his or her land not sold in the first instance for the payment of his or her proportion of the debt. If the land still held by one of them does not discharge his or her proportion of the debt, the balance remaining unpaid should be apportioned in like manner among the others, and the land of each sold to pay his or her proportion thereof, and so on until the whole is paid or the whole land sold. Lewis v. Overby, 31 Gratt. 601: Ryan v. McLeod, 32 Gratt. 367; Foster v. Crenshaw, 3 Munf. 514; Hopkirk v. Dennis, 2 Munf. 326; Mason v. Peter, 1 Munf. 437.
Advancements. — Advancements made by the testator in his lifetime are not to be taken into the account in fixing the proportion of the debts which each devisee is to pay. Gaw v. Huffman, 12 Gratt. 628.
Specific Legacies Liable before Lands Specifically Devised. — Where the testator charges his debts on his personalty only, and the will contains no directions to the contrary, personal property specifically bequeathed is applicable before lands specifically devised; but specific devisees contribute ratably inter se, each being subjected for his proportion of the debt; Edmunds v. Scott, 78 Va. 720; Elliott v. Carter, 9 Gratt. 541; Lewis v. Overby, 31 Gratt. 601.
E. EXONERATION OF ENCUMBERED LANDS.— “Where lands of a decedent descend or are devised subject to a mortgage, or other specific incum- *522 trance, created by the decedent for an obligation of his own contracting, or assumed by him as his proper debt, his personal estate, since it constitutes the natural fund for the payment of all his debts, and has been increased by the consideration for which the incumbrance was given, is primarily liable at common law for the discharge of the lien; consequently, as a general rule, the heir or devisee of such encumbered lands is entitled to have the property exonerated by the discharge of the lien out of the personal estate.” 19 Am. & Eng. Enc. Law (2d Ed.) 1317; Pleasants v. Flood, 89 Va. 96, 15 S. E. Rep. 504; Dandridge v. Minge, 4 Rand. 397; Elliott v. Carter, 9 Gratt. 541.
In a suit by creditors to reach the debtor’s property conveyed in trust for his wife and children, where the deed is valid and upon good consideration as to the children, one of the creditors, who holds the debtor as a surety on a promissory note, will be required to apply on his claim any available property of the principal, who is a party defendant, in exoneration of the land conveyed, provided it can be done without too great delay or prejudice to the rights of the creditor. Rixey v. Deitrick, 85 Va. 42, 6 S. E. Rep. 615.
Incumbrance by Former Owner. — The rule that the personal estate shall be first applied to the payment of mortgages, is founded on the principle that the debt was originally a personal one, and the charge of the real estate merely a collateral security. But where this principle fails, the rule does not take effect. Thus, when the mortgage debt was contracted by one person, and the lands so mortgaged descended to another, his personal estate will not be liable to the payment of the money. Pleasants v. Flood, 89 va. 96, 15 S. E. Rep. 504.
F. CHARGE OF DEBTS AND LEGACIES.
1. Charge or Debts. — At common law the lands of the testator were only liable for debts of record and of specialty binding the heirs, and they were entitled to the real estate, though charged with debts, until convicted of mismanagement, or misapplication of profits. But as it is so natural to suppose that a. man, in a solemn act like a will, intended to be just, that courts have taken very slight words in such an instrument to imply a charge on lands. Frasier v. Littleton, Jan. No. 1902, Va. Law Reg. 620; Trent v. Trent, Gilmer 174; Downman v. Rust, 6 Rand. 587; Gaw v. Huffman, 12 Gratt. 628; Allen v. Patton, 83 Va. 255, 2 S. E. Rep. 143.
a.Direction for Payment of Debts. — It is established as a general rule, that a direction by a testator that his debts shall be paid, charges them by implication on his real estate, either as against his heir at law or devisee, and this charge is not released by a subsequent selection of particular parts to be sold for that purpose. But, where the testator says, “It is my will and desire that my just debts be paid out of my estate,” etc., the debts are not thereby charged upon the testator’s real estate. Allen v. Patton, 83 Va. 255, 2 S. E. Rep. 143; Gaw v. Huffman, 12 Gratt. 628; Read v. Cather, 18 W. Va. 264; Trent v. Trent, Gilmer 174: Leavell v. Smith, July No. 1901, Va. Law Reg. 191; Clarke v. Buck, 1 Leigh 487; Poindexter v. Green, 6 Leigh 504.
where it is manifest that a testator intends that his debts shall be paid out of his personal estate, a direction in his will that his debts shall be paid out of the funds applicable thereto is not a charge of his real estate for the payment of his debts. Frasier v. Littleton, Jan. No. 1902 of Va. Law Reg. 620.
Where a testator expressly charges the payment of certain specified debts upon the whole of his property, and sets apart a fund for the satisfaction of his general creditor, the latter may require the specified debts to be discharged out of the general estate, so as to obtain, payment themselves out of the particular fund. Trent v. Trent, Gilmer 174.
Exceptions to Rule. — To this general rule, however, there are exceptions, one of which is where the debts are directed to be paid by the executors. “If the testator directs a particular person to pay, he is presumed, in the absence of all other circumstances, to intend him to pay out of the funds with which he is entrusted, and not out of other funds over which he has no control. If the executor is pointed out as the person to pay, that excludes the presumption that other persons not named are to pay.” 2 Story’s Eq. Jur. sec. 1247. Quoted in Allen v. Patton, 83 Va. 255, 2 S. E. Rep. 143.
b. Devise to Executors. — When the executor is the devisee of real estate, and he is directed to pay the debts, a charge upon it will be generally implied by such a direction. But this will not be the case where the estate is specifically, devised to a person who happens to be one of the executors. And even where the executors are also devisees, a mere general introductory direction to the executors will not operate as a charge if it is manifest from the whole will that it was not so intended. Gaw v. Huffman, 12 Gratt. 628; Allen v. Patton, 53 Va. 255, 2 S. E. Rep. 142. See post, title, “Lands Devised to Executors.’.’
c. Exoneration of Personal Out of Beal Estate. — 'The personal estate, being the primary fund for the payment of debts, may yet, by the decedent’s will, if he clearly so intends, be exonerated, and the real estate be primarily charged. 3 Min. Inst. (2d Ed.) 584.
Statute (Va. Code 1887, sec. 2665) makes decedent’s real property assets for the payment of his debts in the order in which his personal estate is directed to be applied; but it recognizes his right to charge his land, but not his personalty, for such of his debts as he may prefer. Deering v. Kerfoot, 89 Va. 491, 16 S. E. Rep. 671.
(1. Personal Liability of Devisee upon Acceptance. — By accepting the devises the devisees become personally liable in respect to the subject devised to them respectively, each for his share of the debts. Baylor v. Dejarnette, 13 Gratt. 152.
2. Charge oe Legacies. — Unless legacies are charged upon the real estate by express direction or by necessary implication, the personalty is not only the primary, but the only fund liable for the payment of legacies. Smith v. Mason, 89 Va. 713, 17 S. E. Rep. 3. See ante, title, “Liability for Payment of Legacies,” and cases cited.
a. Intention of Testator. — Whether legacies are a charge upon real estate devised is a question of intention upon the part of the testator, for real estate is not chargeable with the payment of pecuniary legacies, unless the intention of the testator so to charge it is expressed in the will, or such intention appears by implication. Read v. Cather, 18 W. Va. 264; Thomas v. Rector, 23 W. Va. 26; McGlaughlin v. McGlaughlin, 43 W. Va. 226, 27 S. E. Rep. 378; Hogg v. Browning, 47 W. Va. 22, 34 S. E. Rep. 754; Todd v. McFall, 96 Va. 754, 32 S. E. Rep. 472; Smith v. Mason, 89 Va. 713, 17 S. E. Rep. 3; Wood v. Sampson, 25 Gratt. 848; Crouch v. Davis, 23 Gratt. 62; Lewis v. Thornton, 6 Munf. 87.
Parol Testimony to Show Intention. — “According to *523 the English rule that intention is to he derived ■exclusively from the provisions of the will; and parol evidence is inadmissible to aid in ascertaining that intention. 1 Rop. Leg. 451 (576, 4th Ed.); Parker v. Fearnley, 2 Sim. & Stu. 592. In Virginia the rule is not so strict, and parol evidence is admissible. Downman v. Rust, 6 Rand. 587; Clarke v. Buck, 1 Leigh 490; Trent v. Trent, Gilmer 174.” Read v. Cather, 18 W. Va. 267.
Charges of Debts and Legacies Distinguished. — “A distinction has always been recognized between charging land with debts and with legacies. As to the former, the courts have gone on a slight implication and moral principle; but as to legacies there must be a clear, manifest intention that the devisee or heir shall take subject to the legacies.” Lee v. Lee, 88 Va. 805, 14 S. E. Rep. 534.
Annuity. — An annuity is a legacy charged on the whole estate, not specifically devised. Trent v. Trent, Gilmer 188.

1). Circumstances Tending to Show Intention.

Personalty Insufficient to Pay Both Debts and Legacies. — Although legacies do not stand upon as high a ground as debts, yet if the personal fund be inadequate, or if there be expressions in a will, tending to show that the testator had the land in mind, a court will make them a charge on the land, rather than they shall go unpaid. Thus, where a single woman, having but little personal property, and real estate of considerable value, having only one brother, who would have been her heir and distributee, by her will bequeaths pecuniary legacies to two of her friends, as tokens of affection, and makes the brother executor, and residuary legatee, she must be considered as intending that the legacies should be paid out of the land. Downman v. Rust, 6 Rand. 587; Hogg v. Browning, 47 W. Va. 22, 34 S. E. Rep. 754.
Illustrations. — Where a will stated that the testator bequeathed all his “personal property” to his nephews, subject to certain legacies hereinafter specified,” and then devised all “real property” to the nephews, followed by a bequest, “payable from my estate,” it was held that the land was not chargeable with the payment of this last legacy, where the personal property was insufficient to pay it. Todd v. McFall, 96 Va. 754, 32 S. E. Rep. 473.
Where a testator bequeathed a certain sum of money in the second clause of his will, directing it to be realized out of his personal estate, and in a codicil he designated a particular fund out of which he empowered his executors to pay the legacy ; and in the third clause of the will, after directing the legacy to be paid out of the personal estate, provided : “I next devise all my estate, real and personal, or of any description whatever,” to the executors for certain stated trusts, it was held that the real estate could not be charged with the payment of the legacy. Smith v. Mason, 89 Va. 713, 17 S. E. Rep. 3. See also, Bird v. Stout, 40 W. Va. 43, 20 S. E. Rep. 852.
Where the testator, owning real and personal estate, makes his will, beginning, “It is my will and desire that all my just debts be paid; after that I wish C to have 1,000 dollars provided my estate will admit of it”; also bequeathing to the same C the greater part of his personal chattels, specifically, but making no mention of his real estate, which descends to his heir at law, and the whole personal estate proves insufficient to pay debts and the 1,000 dollar legacy ; it was held that both the testator’s debts, and C’s legacy are charged by the will on the real estate descended. Clarke v. Buck, 1 Leigh 487.
Where a testator by will gave one of his sons a tract of land, but since the making of the will, the house on the land was destroyed by fire, and by codicil he then bequeathed to that son, “out of any money due and belonging to my estate,” a sum to rebuild, it was held that the legacy was not a charge upon any of the testator’s lands. Lee v. Lee, 88 Va. 805, 14 S. E. Rep. 534.

c. Effect of Residuary Clause.

(i) Blending Real and Personal Estate in Residuary Clause. — An intention to charge the real estate with the payment of legacies is inferred where pecuniary legacies alone are first given and no part of the real estate is specifically devised, and there is a residuary clause devising and bequeathing the residue of the real and personal estate, thus blending the two kinds of property into a common fund, and thereby plainly manifesting a purpose to make no distinction between them. An intention to charge the real estate is likewise inferred where a testator devises the real estate, after a direction that debts and legacies be first paid, or previously paid; or devises the remainder of his estate, real and personal, after payment of debts and legacies; or the devise is declared to be made after they are paid. Todd v. McFall, 96 Va. 754, 32 S. E. Rep. 472; Crouch v. Davis, 23 Gratt. 94, opinion of Staples, J.; Lee v. Lee, 88 Va. 805, 14 S. E. Rep. 534; Smith v. Mason, 89 Va. 713, 17 S. E. Rep. 3; Wood v. Sampson, 25 Gratt. 845; Siron v. Ruleman, 32 Gratt. 215; Downman v. Rust, 6 Rand. 587.
Legacies Payable at All Events. — Where it is manifest from the whole will, that it was the design of the testator, that the legacies should be paid at all events, the implication is, that the residuary devi-see or legatee shall only have the remainder after satisfaction of the previous disposition. Thomas v. Rector, 23 W. Va. 26; Bird v. Stout, 40 W. Va. 43, 20 S. E. Rep. 852.
Where a testator by will gives several pecuniary legacies, but does not, in the residuary clause, separate the real and personal estate, but blends them together, and gives his brother and three sisters the residue of both, shows that he had his mind on both as a fund to answer for the legacies, hence the legacies will be charged upon the entire residue including the residuary real estate. Bird v. Stout, 40 W. Va. 43, 20 S. E. Rep. 852; Elliott v. Carter, 9 Gratt. 541. 550.
Where a testator after providing for the payment of several pecuniary legacies, without designating out of what estate they should be paid, but declares that they shall be paid by his executor “out of his estate,” and in his will does not make any specific devise of his real estate or any part thereof, but blends the real and personal property together as one fund in the residuary clause, he manifests an intention to charge the land with the payment of the legacies, if the personal property should not be sufficient to pay the same. Thomas v. Rector, 23 W. Va. 26.
Introductory Words. — Even where the testator uses introductory words, which would raise by implication a charge upon the real estate, that implication is rebutted where he disposes of his personal estate in the form of a residue after the gift of legacies. Read v. Cather, 18 W. Va. 264.
Legacy in Codicil. — In Lee v. Lee, 88 Va. 805, 14 S. E. Rep. 534, the court refused to hold a legacy given by a codicil a charge upon real estate disposed of by a clause in the will blending the real and personal property.
*524 d. Charge on Lands Devised. — whether legacies are a charge on land devised is a question of intent of the testator. Hogg v. Browning, 47 W. Va. 22, 34 S. E. Rep. 754. See ante, title, “Intention of Testator.”
(i) Direction for Payment of Legacies. — A direction to the executor, who is also a devisee, to pay legacies has been held, however, not to he conclusive that it was the intention of the testator to charge their payment upon the land devised to him. Allen v. Patton, 83 Va. 255, 2 S. E. Rep. 143.
e. Lands Devised to JSxecutor. — Formerly the fact that the devisee is also executor and is directed to pay the legacies as executor was held to he a material element in arriving at an intent to charge the legacies on the real estate; hut in Parker v. Feamley, 2 Sim. & Stro. 592, it was held, that where a testatrix directed her legacies to he paid hy her executor, to whom she afterwards devised all her real estate, and the residue of her personal estate after payment of debts and funeral expenses, that the legacies were not charged on the real estate. Read v. Gather, 18 W. Va. 269.
Butin Bird v. Stout, 40 W. Va. 43, 20 S. E. Rep. 852, and Downman v. Rust, 6 Rand. 587, the former rule seems to he adhered to. In Bird v. Stout, supra, the court said: “And the fact that wesley M. Bird is executor and a devisee also is important. The case of Downman v. Rust, 6 Rand. 587, is exactly in point.” See also, opinion of Judge Carr, in Downman v. Rust, 6 Rand. 587, in which he cites early English cases in support of this proposition. „
Thus where a will gives several pecuniary legacies, and then gives a sum of money to three children, and “the residue of my estate, real and personal,” to a brother and three sisters, and appoints that brother Us executor, such will creates a charge on the land for the legacy of those children. Bird v. Stout, 40 W. Va. 43, 20 S. E. Rep. 852.
/. JSnforcement of Charge.
Enforcement against Purchaser from Devisee.— Where a will charges with a legacy land devised to a person, and he conveys it to a third person, who retains in his hands, of the purchase money, a sum to pay the legacy, promising his grantor to pay it, such grantor may maintain a hill in equity against his grantee, making the legatees parties, to compel the payment of such fund on the legacy, and to enforce the charge on the land. Bird v. Stout, 40 W. Va. 43, 20 S. E. Rep. 852; Burwell v. Fauber, 21 Gratt. 446, and note.
Following Proceeds of Land Charged. — A testator devised lands to a devisee, charged with an annuity to another, and to pay it the devisee sold a certain tract of land, “White Marsh.” In the suit, the devisee convened the annuitant and the purchaser of the land, and with the assent of the annuitant, the court ratified the sale and allowed the devisee to collect one-third of the purchase money for his own use, and secured two-thirds on “White Marsh,” the interest thereon to he paid to the devisee to meet the annuity. Subsequently the purchaser of “White Marsh” failed, and the court resold the land. After selling “White Marsh,” however, the devisee purchased another tract, “Ditchley” with the proceeds thereof. It was held, upon a hill filed hy the annuitant, alleging that “Ditchley” had been paid for with a part of the proceeds of “White Marsh,” and was therefore liable for the deficiency’ of his annuity, that the interest on the deferred payment secured on “White Marsh” was made payable to the annuitant, as an equivalent for the annuity given him hy the will, so far at least, as the- annuity affected ‘ White Marsh,” or the amount of the proceeds of sale which was paid to the devisee; and even if “Ditchley” was paid for with money so paid to the devisee, no charge thereon would attach in favor of the annuitant. Tabb v. Tabb, 82 Va. 48.
Effect of Legatee’s Delay In Enforcing Legacy. — Id. Lewis v. Thornton, 6 Munf. 87, a general charge upon the estate of a testator, for the payment of legacies, in aid of a particular fund provided for that purpose, was not enforced against bona fide purchasers of the lands, after a great lapse of time, because it might admit of a doubt whether, by the terms of the will, the charge was upon the land itself, or only upon the profits thereof; because the lands might be presumed to be exonerated by requisition of security from the devisees for the payment of the legacies; and above all, because the testator left a personal estate abundantly sufficient for that purpose; which estate was wasted by the executors.
G. RULE OF MARSHALING APPLIED.
l. in Whose favor.
a. Between Specialty and Simple Contract Creditors.— At common law, if a specialty creditor whose debt binds the real as well as the personal assets, is satisfied out of the personalty, the simple contract creditor shall pro tanto come in upon the realty; and equity will decree a sale of it, for the satisfaction of his debt. Tennent v. Pattons, 6 Leigh 196; Cralle v. Meem, 8 Gratt. 496; Pugh v. Russell, 27 Gratt. 789.
Previous to the act in the Va. Code of 1849, a judgment against a deceased person had priority over debts by simple contract, and was to be paid out of the personal assets, if these were sufficient for the purpose, and having been paid out of the personal assets, this did not give simple contract creditors a right to have the assets marshaled, and to have their debts paid pro tanto out of the real estate. Pugh v. Russell, 27 Gratt. 789.
Must Pursue Executor and Securities. — But a simple contract creditor, having obtained a judgment by default against an executor, cannot maintain a suit in equity, for marshaling assets, against devisees of the landed property, until he has fully prosecuted his claim at law against the executor and his securities. Mason v. Peter, 1 Munf. 437.
Where a commissioner, settling an administration account before a court of probate, states in his report that two of the credits allowed the executor were for payment of judgments, which were liens on the real estate, this is not evidence against the devisees to prove that the judgments were recovered against the executor upon a bond of the testator binding his heirs, and to entitle a simple contract creditor to marshal the assets. Pugh v. Russell, 27 Gratt. 789.
Bill by Simple Contract Creditors. — Upon a bill by simple contract creditors to marshal assets, it is competent for the court in its discretion, to decree a sale of the real estate in the hands of the heirs, some of whom are infants, for the payment of the debts. But it is premature to decree a sale before adjudicating the claims of the creditors, and so ascertaining the amount of indebtedness chargeable upon the lands of the decedent. Cralle v. Meem, 8 Gratt. 496.
Creditor of Deceased Debtor. — The creditor of a deceased debtor may proceed in equity against his heirs residing abroad, as absent defendants, to marshal the assets, and thus subject the land or its *525 proceeds, in the state, descended to them, from the debtor. Carrington v. Didier, 8 Gratt. 360.
As to Judgment Creditors. — In the application of the principle of marshaling assets, simple contract creditors will he substituted for specialty creditors, hut not for judgment creditors; that is, the simple contract creditors cannot charge the lands for so much of the personal fund as has been applied to the payments of debts due by judgments obtained against the ancestor. The reason is, that the writ of elegit, by virtue of which the land is charged b3r judgment against the ancestor, does not issue singly against the land, but against all the chattels (save oxen, and beasts of the plough), and if the chattels be sufficient, the land ought not to be extended. The judgment creditor, therefore, had not the election between two funds (as the specialty creditor has) and the principle on which the assets are marshaled does not apply to the case. Alston v. Munford, 1 Brock. 366, 1 Fed. Cas. 578; Pugh v. Russell, 37 Gratt. 789; Rogers v. Denham, 2 Gratt. 200.
Personalty Exhausted by Taxes. — The payment of taxes due to the state out of the personal assets does not give a simple contract creditor a right to have assets marshaled. Pugh v. Russell, 27 Gratt. 789.
b. In Favor of Legatees.
Legacies Charged and Legacies Not Charged. — “The exemption of real estate devised extends as well to the case of a deficiency of personal assets for the payment of legacies as of debts; the legatees having no right to call upon the devisee to contribute to the payment of their legacies, unless the real estate be expressly charged. But in either case the right thus asserted on the part of the devisee to hold the estate devised, as against the legatees, free from liability for debts or legacies, is to be confined to the case of a devisee of real estate not charged with the payment of debts or legacies; for it is equally clear that where the estate devised is so charged, it is applicable before legacies, and the legatees have the right to have the assets marshaled in their favor. The legacies not being charged with the payment of debts while the real estate devised is so charged, the legatees will be regarded as more the objects of the testator’s bounty than the devisee; and where the personal estate is not sufficient to pay both the creditors and the legatees, the latter will be entitled to charge the real estate devised so far as the personal estate has been applied in the payment of debts,” Elliott v. Carter, 9 Gratt. 541. See also, Pleasants v. Flood, 89 Va. 96, 15 S. E. Rep. 594.
Specific and Pecuniary Legatees. — The right to marshal assets is afforded equally in favor of specific and pecuniary legatees. Elliott v. Carter, 9 Gratt. 541.
c. In Aid of Devisees. — Where lands not chargeable with the payments of debts are sold for that purpose, the devisee thereof may subject lands devised to pay debts to reimbursements. Cranmer v. McSwords, 24 W. Va. 594.
“That the devisee of real estate not charged with the payment of debts, is entitled to have the assets marshaled against the claimants of the other funds of the estate in the order stated, including specific legatees, is well settled by the authorities.” Elliott v. Carter, 9 Gratt. 549.
The principle which lies at the foundation of the right of a legatee or devisee to marshal the assets, is the presumed intention or inclination of the testator in his favor. Elliott v. Carter, 9 Gratt. 551.
Lands Devised Separately. — Where land subject to pay debts of the testator is devised one-fourth to one devisee and three-fourths to another, a judgment against them should be separately against each for his pro rata share of the debt with a reservation to the plaintiff to proceed against the interest of either for any deficiency after exhausting the interest of the other. Pugh v. Russell, 27 Gratt. 789.
If a testator does not charge the real estate with the payment of debts, but, after making his will, encumbers a portion of his real estate by a specific lien, the devisee of such portion as between him and the devisee of other real estate, takes cumonere. Frasier v. Littleton, Jan. No. 1902 of Va. Law Reg. 620.